Anton Johnson, : 
        Petitioner : 
  : 
  : 
     v. : 
  : 
PA Dep't of Corr., K.P. Reisinger, et al., :   No. 756 M.D. 2018
        Respondents :   Submitted: May 1, 2020

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                    FILED: June 2, 2020

Before this Court are the Pennsylvania Department of Corrections' (Department) and Hearing Officer K.P. Reisinger's (Officer Reisinger) (collectively, DOC) preliminary objections (Preliminary Objections) to Anton Johnson's (Johnson) pro se amended petition for review in the nature of a complaint in mandamus (Petition) filed in this Court's original jurisdiction. After review, we sustain the Preliminary Objections and dismiss the Petition.

**Background**

On August 15, 2012, an officer notified Johnson, while working in the State Correctional Institution (SCI) at Camp Hill's recreation yard, to report to the block officer when recreation was over, because he had a visitor. *See* Petition ¶2. At the conclusion of recreation, Johnson immediately reported to the block officer to receive confirmation of his visitor and proceeded to his cell to prepare for the visit. *See* Petition ¶3. Because the pants he was wearing were wet from sweat, and the

inmates' laundry was late returning clean clothing for the unit, Johnson alerted the block officer that he needed a pair of size 3x pants. *See* Petition ¶¶4-5. The block officer said he would check to see if there were any pants in the block's closet. *See* Petition ¶5. A block worker brought two pairs of size 3x pants to Johnson's cell. *See* Petition ¶6. The block worker said he did not know if they were clean, but they were better than what Johnson was wearing. *See id.*

Johnson laid the pants on his bunk and continued to wash up. *See* Petition ¶7. The block officer came to Johnson's cell and ordered him to hurry so he would not be caught up in the prison count and have to make his family wait longer. *See* Petition ¶8. Johnson finished washing, put on the best-looking pair of pants, along with his shirt and boots, and exited the cell toward the officer's control booth for his pass. *See* Petition ¶9. The block officer told Johnson to make sure he kept his pass and prison identification in his hands to show the officers at the three check points on the way to the visitation area. *See* Petition ¶10.

Johnson exited his block, proceeded through the checkpoints and entered into the inmate lobby area to await his turn to begin the strip search process with other inmates. *See* Petition ¶¶11-12. Upon entering the inmate strip room, Johnson was asked his size, was given a hanger, and told to remove his clothing, place them on the hanger, hand them to the inmate behind the counter, and step aside. *See* Petition ¶13. Johnson removed his boots and shirt and placed them on the counter. He then removed his pants and while shaking them out before folding them at the crease to place on the hanger, he heard Security Officer Tilden (Officer Tilden) ask if something fell on the floor. *See* Petition ¶14. Johnson responded that he did not know. *See id.* Officer Tilden asked Johnson what was on the floor, and Johnson replied, "a[]lot of paper." Petition ¶15. Officer Tilden looked over the counter to see, and told Johnson to pick the papers up. *See id.* Johnson picked the papers up and handed them to Officer Tilden. *See id.* Officer Tilden inspected the papers, gave

2

them back to Johnson, and ordered him to throw the papers into the trash can. *See id.* Johnson threw the papers in the trash can. *See id.*

After Johnson finished the strip search and got dressed, he asked Officer Tilden if he could use the bathroom before going into the visiting room, and Officer Tilden consented. *See* Petition ¶17. Johnson used the bathroom and walked into the visiting room to wait for his family. *See id.* Approximately 15 to 20 minutes later, security officers approached Johnson, handcuffed him and escorted him to the restrictive housing unit (RHU). *See id.* Later that same day, Johnson received a DC-804 Investigative Report, which stated he was being held for investigation. *See* Petition ¶18.

On August 16, 2012, Johnson received a DC-141 Misconduct for Escape and Possession of Contraband, *see* Petition ¶19, presumably, because the papers found in the pants purportedly contained an escape note. Johnson submitted a DC-141 Inmate Statement. *See id.* A hearing on the disciplinary charges was scheduled for August 21, 2012, but Johnson was transferred to Chester County Prison for processing of his criminal charges[1] and placed in the minimum custody block. *See* Petition ¶20. Johnson returned to SCI-Camp Hill in October 2012. *See* Petition ¶21. Officer Reisinger conducted the disciplinary hearing on October 25, 2012. *See id.* Officer Tilden did not attend. *See id.*

During the hearing, Officer Reisinger allegedly refused to: call any of Johnson's witnesses, examine any camera footage, produce the escape note, or grant Johnson a handwriting specialist from the Office of Special Investigations and Intelligence (OSII) to compare the writing on the alleged escape note. *See* Petition ¶22. Officer Reisinger also refused to allow any staff to help Johnson defend against his charges, and refused to allow Johnson to see any of the video footage or challenge

---

[1] The Petition does not indicate to what criminal charges Johnson is referring.

any of the evidence. *See id.* Johnson was given 90 days in the RHU as a disciplinary sanction and punishment for the charges. *See id.*

On October 25, 2012, Johnson submitted an Inmate Appeal form to the Sergeant[2] during mail and paperwork hand-out. *See* Petition ¶23. Johnson also filed several grievances, and his family called the prison and the OSII to report the Department's actions. *See id.* Approximately four to seven days later, Johnson was transferred to SCI-Fayette, and his misconduct appeal was never ruled upon. *See id.* Johnson was given a high-level custody (H) code for Escape at SCI-Fayette, but not until he began filing grievances regarding his misconduct hearing. *See* Petition ¶24.

**Facts**

On December 5, 2018, Johnson filed a petition for review with this Court. On January 16, 2019, Johnson filed the instant Petition. Therein, Johnson requests this Court to direct SCI-Camp Hill/SCI-Administration to: (1) grant him another hearing on the Escape and Possession of Contraband charges, with a full review of the evidence that was not introduced and the evidence that was withheld by the SCI-Camp Hill investigative officers; (2) remove the high security codes O[3] and H from his record and lower his custody level; and (3) remove him from SCI-Fayette and all prisons within this Western Region, due to fear of being retaliated against for submitting the Petition. *See* Petition at 7.

After being afforded numerous time extensions, DOC filed its Preliminary Objections in the nature of a demurrer on September 11, 2019. Therein, DOC alleged: (1) Johnson's claims are time barred by the applicable two-year statute of limitations; (2) Johnson failed to exhaust administrative remedies; (3) Johnson

---

[2] The Petition does not indicate the name of the sergeant.

[3] The Petition does not indicate what O code is or when Johnson was assigned such custody level.

4

failed to include writings pursuant to Pennsylvania Rule of Civil Procedure No. (Rule) 1019(i); (4) Officer Reisinger is not a Commonwealth Statewide Officer; (5) this Court does not have original or appellate jurisdiction over inmate disciplinary and grievance decisions; and (6) DOC is entitled to a demurrer due to the insufficiency of Johnson's pleading.

After being afforded numerous time extensions, DOC filed its brief in support of its Preliminary Objections on January 6, 2020. By February 19, 2020 Order, this Court directed Johnson to file his response brief by March 2, 2020, or be precluded from so filing. Johnson did not file a brief.

## Discussion

The law is well settled:

> In ruling on preliminary objections, we must accept as true all well-pleaded material allegations in the petition for review, as well as all inferences reasonably deduced therefrom. The Court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them.

> A preliminary objection in the nature of a demurrer admits every well-pleaded fact in the [petition for review in the nature of a] complaint and all inferences reasonably deducible therefrom. It tests the legal sufficiency of the challenged pleadings and will be sustained only in cases where the pleader has clearly failed to state a claim for which relief can be granted. When ruling on a demurrer, a court must confine its analysis to the [petition for review in the nature of a] complaint.

*Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010) (citations omitted). "[C]ourts reviewing preliminary objections may not only consider the facts pled in the [petition for review in the nature of a] complaint, but also any documents or

exhibits attached to it." *Allen v. Dep't of Corr.*, 103 A.3d 365, 369 (Pa. Cmwlth. 2014).

DOC first argues that Johnson's claims are barred by the two-year statute of limitations.[4] DOC specifically argues:

> In Pennsylvania, the appropriate statute of limitation is two years from the date of incident. 42 Pa.C.S.[] § 5524, *Bougher v. Univ*[.] *of Pittsburgh*, 882 F.2d 74, 78 (3d Cir. 1989). *See Doner v. Jowitt & Rodgers Co.*, 445 A.2d 1237, 1240 (Pa. Super. 1982); *Mosley v. Settles*, 779 A.2d 1208, 1209 (Pa. Super. 2001).

DOC Br. at 7. Section 5524 of the Judicial Code provides:

> The following actions and proceedings must be commenced within two years:
>
> (1) An action for assault, battery, false imprisonment, false arrest, malicious prosecution or malicious abuse of process.
>
> (2) An action to recover damages for injuries . . . .
>
> (3) An action for taking, detaining or injuring personal property[.]
>
> (4) An action for waste or trespass of real property.
>
> (5) An action upon a statute for a civil penalty or forfeiture.
>
> (6) An action against any officer of any government unit for the nonpayment of money or the nondelivery of property . . . .
>
> (7) Any other action or proceeding to recover damages for injury to person or property . . . .

---

[4] Rule 1030(a) provides that the statute of limitations is an affirmative defense that must be pled as "new matter," and should not be asserted during the preliminary objections stage. Pa.R.C.P. No. 1030(a). However, this Court has held that, although "the statute of limitations is to be pled as new matter, it may be raised in preliminary objections where the defense is clear on the face of the pleadings and the responding party does not file preliminary objections to the preliminary objections." *Petsinger v. Dep't of Labor & Indus., Office of Vocational Rehabilitation*, 988 A.2d 748, 758 (Pa. Cmwlth. 2010). Here, Johnson did not file preliminary objections to the Preliminary Objections.

(8) An action to recover damages for injury to a person or for the death of a person . . . .

42 Pa.C.S. § 5524.

DOC does not specify which subsection of Section 5524 of the Judicial Code upon which it relies. Notwithstanding, DOC's above-cited cases involve personal injury claims. Because none of Johnson's claims are based on personal injury, DOC's first preliminary objection is overruled.[5]

DOC next asserts that Johnson failed to exhaust his administrative remedies by not appealing from the misconduct and resulting discipline to even the first level of the Department's three-level administrative appeal process available to all SCI inmates.

Section 93.10(b)(6) of the Department's Regulations provides an administrative appeal process for inmates who are dissatisfied with the result of prison misconduct hearings. *See* 37 Pa. Code § 93.10(b)(6). Specifically, DC-ADM 801 provides for a three-level appeal process from all misconducts, beginning with the filing of a DC-141, Part 2(E).[6] "As a defense asserted in a preliminary objection under [Rule] 1028(a)(7), failure to exhaust remedies generally cannot be determined from the existing record and requires consideration of facts presented in a hearing or by other evidence." *Mayo v. Newman* (Pa. Cmwlth. No. 279 C.D. 2018, filed August 15, 2018), slip op. at 9.[7]

---

[5] Johnson's claims do not appear to fall within any of the enumerated actions.

[6] *See* https://www.cor.pa.gov/AboutUs/Documents/DOCPolicies/801_Inmate_Discipline.pdf (last visited June 2, 2020).

[7] Pursuant to Section 414(a) of the Commonwealth Court Internal Operating Procedures, unreported opinions of a panel of the Commonwealth Court, if issued after January 15, 2008, may be cited for their persuasive value, but not as binding precedent. 210 Pa. Code § 69.414(a). *Mayo* is cited for its persuasive value.

Here, Johnson alleged:

> On October 25[,] 2012[,] on [the] p[.]m[.] shift[,] I submitted my **Inmate Appeal form** to the [Sergeant] during mail and paperwork hand[-]out[.] I also filed several grievances and my family called the prison and [the] OSII security office to report the actions of the prison and my treatment. [Four to seven] days later, I was transferred to SCI-Fayette and I was never given the Appeal [sic] to the misconduct.

Petition ¶23 (emphasis added).

This Court "must accept as true all well-pleaded material allegations in the petition for review, as well as all inferences reasonably deduced therefrom." *Torres*, 997 A.2d at 1245. Further, "any doubt should be resolved by a refusal to sustain" the preliminary objection. *Id.* Because it can be inferred from the above-quoted allegation that Johnson filed a DC-141, Part 2(E), which was not disposed of because of his transfer, it does not "appear with certainty that the law will not permit recovery." *Id.* Accordingly, DOC's second preliminary objection is overruled.

DOC also contends that Johnson failed to include writings pursuant to Rule 1019(i). Specifically, DOC maintains that the Petition should be dismissed because Johnson failed to attach the documents referred to therein, i.e., DC-141, Part 2(C) (Inmate Statement), DC-141, Part 2(A) (Inmate Witness List), Inmate Appeal form and grievances.

Rule 1019(i) provides:

> When any claim or defense is based upon a writing, the pleader shall attach a copy of the writing, or the material part thereof, but if the writing or copy is not accessible to the pleader, it is sufficient so to state, together with the reason, and to set forth the substance in writing.

Pa.R.C.P. No. 1019(i). The Pennsylvania Supreme Court has explained:

> While our rules require the pleading of all material facts upon which claims are based, **there is no requirement to**

8

**plead the evidence upon which the pleader will rely to establish those facts**. *United Refrigerator Co. v. Applebaum*, . . . 189 A.2d 253, 255 ([Pa.] 1963); *Unified Sportsmen of Pa. v. Pa. Game Comm'n*, 950 A.2d 1120, 1134 (Pa. [Cmwlth.] 2008) (holding that to be sufficiently specific, '**the complaint need not cite evidence but only those facts necessary for the defendant to prepare a defense**'). We have long recognized that 'the line between pleading facts and evidence is not always bright[,]' but distilled the specificity requirement into two conditions that 'must always be met: [t]**he pleadings must adequately explain the nature of the claim to the opposing party so as to permit him to prepare a defense and they must be sufficient to convince the court that the averments are not merely subterfuge**.' *Bata v. Cent.-Penn Na*[*'l*] *Bank of Phila*[.], . . . 224 A.2d 174, 179 ([Pa.] 1966); *see also Martin* [*v. Lancaster Battery Co., Inc.*], 606 A.2d [444,] 448 [(Pa. 1992)]. To assess whether a claim has been pled with the requisite specificity, **the allegations must be viewed in the context of the pleading as a whole**.

*Commonwealth by Shapiro v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1029-30 (Pa. 2018) (emphasis added). "Only documents forming the basis of the cause of action must be attached as exhibits to a complaint." *Mayo*, slip op. at 8.

Here, the basis of the Petition is Johnson's alleged unfair hearing. This claim is not based upon a writing, but rather the hearing itself. "In addition, the [DC-141, Part 2(C) (Inmate Statement), DC-141, Part 2(A) (Inmate Witness List), Inmate Appeal form and grievances] are presumably in [DOC's] possession. Therefore, [Johnson] did not have to attach them to his [Petition]." *Mayo*, slip op. at 8. Because it does not "appear with certainty," *Torres*, 997 A.2d at 1245, that the writings were required to "adequately explain the nature of the claim to the opposing party so as to permit [it] to prepare a defense," *Golden Gate*, 194 A.3d at 1030, DOC's third preliminary objection is overruled.

DOC next argues that the Petition must be dismissed because Officer Reisinger, during the timeframe complained of within the Petition, was a Disciplinary

9

Hearing Examiner at SCI-Camp Hill and, therefore, was not a statewide officer for purposes of the Court's original jurisdiction.

"Pursuant to Section 761(a)(1) of the Judicial Code, the Commonwealth Court shall have original and exclusive jurisdiction over civil actions against the Commonwealth government, with specified exceptions not relevant here. 42 Pa.C.S. § 761(a)(1)." *Chruby v. Dep't of Corr.*, 4 A.3d 764, 772 (Pa. Cmwlth. 2010). "This Court has original jurisdiction in a suit against a Commonwealth party and non-Commonwealth parties [] when the Commonwealth party is indispensable." *Id.* (quoting *Ballroom, LLC v. Commonwealth*, 984 A.2d 582, 588 (Pa. Cmwlth. 2009)).

Here, because it is not contested that DOC is an indispensable party, Officer Reisinger's status is of no moment. Accordingly, DOC's fourth preliminary objection is overruled.

DOC next asserts that this Court does not have original or appellate jurisdiction over inmate disciplinary and grievance decisions. "[W]e agree with [DOC] that this Court lacks jurisdiction, in our appellate capacity, to consider [Johnson's] Petition. Specifically, '[i]nmate misconducts are a matter of internal prison management and, thus, do not constitute adjudications subject to appellate review.'" *Dantzler v. Wetzel*, 218 A.3d 519, 522 (Pa. Cmwlth. 2019) (quoting *Hill v. Dep't of Corr.*, 64 A.3d 1159, 1167 (Pa. Cmwlth. 2013)).

> [A]s to the viability of [Johnson's] suit in this Court's original jurisdiction, [the Department's] decisions regarding inmate misconducts generally fall outside the scope of our original jurisdiction. *Hill.* This holds true even where a prisoner's constitutional rights were allegedly violated because '[p]rison inmates do not enjoy the same level of constitutional protections afforded to non-incarcerated citizens.' *Bronson v. Cent. Office Review Comm.*, . . . 721 A.2d 357, 359 ([Pa.] 1998). Indeed, 'incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the

considerations underlying our penal system.' *Robson v. Biester*, . . . 420 A.2d 9, 13 ([Pa. Cmwlth.] 1980).

*Dantzler*, 218 A.3d at 523.[8]

Here, Johnson is seeking a second misconduct hearing, which is essentially another way of appealing from his first misconduct hearing. Because misconduct hearings are part of the "Department's Inmate Discipline Procedures Manual," *see* DC-ADM 801, Section 3 ("Misconduct Hearings"),[9] and this Court does not have original or appellate jurisdiction over DOC's misconduct decisions, DOC's fifth preliminary objection is sustained.[10]

## Conclusion

Because this Court does not have jurisdiction over Johnson's Petition, the Petition is dismissed.

_____
ANNE E. COVEY, Judge

---

[8] The Dissent states that based on the *Dantzler* Dissent, "Johnson has stated a claim that triggers our original jurisdiction, and would overrule the preliminary objections to the extent [] DOC argues we do not have such jurisdiction to consider this matter." *Johnson v. Pa. Dep't of Corr.* (Pa. Cmwlth. No. 756 M.D. 2018, filed June 2, 2020) (Ceisler J., concurring/dissenting), slip op. at 3. However, as the dispositive facts herein are virtually identical to those in *Dantzler*, this Court is obligated to follow *Dantzler* as well as the constraints established in *Bronson*. Accordingly, the Court must sustain DOC's preliminary objections and dismiss Johnson's Petition.

[9] Indeed, "[t]he Hearing Examiner is solely responsible for decisions of credibility and guilt or innocence. Any sanction is to be decided by the Hearing Examiner." https://www.cor.pa.gov/AboutUs/Documents/DOCPolicies/801_Inmate_Discipline.pdf (last visited June 2, 2020) (DC-ADM 801(A)(4)).

[10] Because of this Court's disposition of DOC's fifth preliminary objection, there is no need to address DOC's last preliminary objection.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anton Johnson,                          :
                    Petitioner         :
                                        :
            v.                          :
                                        :
PA Dep't of Corr., K.P. Reisinger, et al., :    No. 756 M.D. 2018
                    Respondents        :

O R D E R

AND NOW, this 2nd day of June, 2020, the Pennsylvania Department of Corrections' and Hearing Officer K.P. Reisinger's fifth preliminary objection to Anton Johnson's pro se amended petition for review in the nature of a complaint in mandamus (Petition) is SUSTAINED, and the Petition is DISMISSED.


_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anton Johnson,                          :
                    Petitioner          :
                                        :
        v.                              :  No. 756 M.D. 2018
                                        :  SUBMITTED:  May 1, 2020
PA Dep't of Corr., K.P. Reisinger,      :
et al.,                                 :
                    Respondents         :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

CONCURRING AND DISSENTING OPINION
BY JUDGE CEISLER                                    FILED:  June 2, 2020

        I join the majority, insofar as it overrules Respondents Pennsylvania
Department of Corrections' (Department) and Hearing Officer K.P. Reisinger's
(Officer Reisinger) (collectively, DOC) preliminary objections to Petitioner Anton
Johnson's (Johnson) Amended Petition for Review (Amended Petition) regarding
Johnson's alleged failure to file within the applicable statute of limitations, exhaust
administrative remedies, or attach necessary writings to his Amended Petition, as
well as regarding the fact that Officer Reisinger is not a Commonwealth Statewide
Officer. However, I strongly dissent from the majority's decision to sustain the
DOC's preliminary objections to our jurisdiction in this matter.

        I recognize that our existing case law prevents courts from exercising
any appellate jurisdiction over DOC grievance matters and from exercising original
jurisdiction over such grievance matters in almost every circumstance. That is the
combined thrust of the Supreme Court's decision in *Bronson v. Central Office*

*Review Committee*, 721 A.2d 357 (Pa. 1998), and the Commonwealth Court's *en banc* decision in *Dantzler v. Wetzel*, 218 A.3d 519 (Pa. Cmwlth. 2019).

Even so, it is entirely inappropriate to completely sustain the DOC's preliminary objections to our jurisdiction here.

> In ruling on preliminary objections, this Court accepts as true all well-pled allegations of material fact, as well as all inferences reasonably deducible from those facts. *Key v. Pa. Dep't of Corr.*, 185 A.3d 421 (Pa. Cmwlth. 2018). However, this Court need not accept unwarranted inferences, conclusions of law, argumentative allegations, or expressions of opinion. *Id.* For preliminary objections to be sustained, it must appear with certainty that the law will permit no recovery. *Id.* Any doubt must be resolved in favor of the non-moving party. *Id.*

*Dantzler*, 218 A.3d at 522 n.3.

At its most basic level, "[t]he touchstone of due process is protection of the individual against arbitrary action of government[.]" *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). Given this, I am deeply disturbed by the stark *lack of process* Johnson alleges he was given by the DOC. In his Amended Petition, Johnson claims he was prevented from presenting any witnesses or evidence at the grievance hearing, could not confront or question the prison guard who presumably found the escape note, and was not allowed to inspect or challenge the escape note itself. Amended Petition, ¶¶21-22. Taking such allegations as true at this juncture, and even accounting for the decreased level of constitutional protections given to prisoners, these averments establish that the DOC egregiously deprived Johnson of any meaningful amount of due process.

The inmate grievance process should not be a kangaroo court that capriciously upholds or imposes penalties. Instead, the accused must be given a reasonable opportunity to defend themselves against a charge; otherwise, the outcome of

each grievance will be based upon nothing more than the presiding officer's whim, rather than some semblance of objective or defined standards. Such procedural due process protections constitute "*an elemental, foundational component of justice*[,]" the absence of which renders any imposed punishment "*fundamentally unfair*." *Dantzler*, 218 A.3d at 528 (Ceisler, J., concurring in part and dissenting in part).

Indeed, this is precisely the type of future scenario I was concerned about in *Dantzler*, when I wrote: "The majority's decision [in *Dantzler*] essentially gives the [DOC] license to operate as a Star Chamber of sorts, secure in the knowledge that its handling of misconduct matters is effectively immune from judicial review, no matter how capriciously it chooses to alter or promulgate its internal regulations, or punish those members of our society over which it maintains custodial control." *Id.* Our continued failure to intercede, no matter how manifestly deficient the DOC's handling of an inmate grievance may be, is a shameful blot upon our jurisprudence.

As such, I would rule that Johnson has stated a claim that triggers our original jurisdiction, and would overrule the preliminary objections to the extent the DOC argues we do not have such jurisdiction to consider this matter. I therefore respectfully dissent in part.

_____
ELLEN CEISLER, Judge