# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Brandon Key, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 371 M.D. 2015 |
| | : | Submitted: October 14, 2016 |
| The Pennsylvania Department | : | |
| of Corrections, | : | |
| Respondent | : | |

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
                   HONORABLE P. KEVIN BROBSON, Judge
                   HONORABLE JAMES GARDNER COLINS, Senior Judge

**OPINION**
**BY JUDGE SIMPSON**[1]                    **FILED: April 10, 2018**

Before this Court in our original jurisdiction are the preliminary objections of the Pennsylvania Department of Corrections (DOC) to an amended petition for review (amended petition) filed by inmate Brandon Key (Key). Key's amended petition challenges the validity of DOC Policy DC-ADM 803 (entitled, "Inmate Mail and Incoming Publications"). Upon review, we sustain DOC's preliminary objections and dismiss Key's amended petition.

## I. Background

Key is an inmate in DOC custody. In July 2015, he filed suit seeking this Court's review of DC-ADM 803, which governs inmate mail and incoming publications. Key challenged the definitions of "publication" and "catalogue" used in DC-ADM 803 as overly restrictive, as well as DC-ADM 803's ban on sexually explicit materials and materials containing nudity as conflicting with Pennsylvania law and violating his rights under the U.S. and Pennsylvania Constitutions.

---

[1] This case was reassigned to the author on February 6, 2018.

After Key filed his initial petition for review, DOC amended DC-ADM 803 to reflect a new definition of the term "publication."

Key subsequently filed the amended petition. Key now concedes that the amended version of DC-ADM 803 (New 803) permits inmates to receive catalogues and purchase commercially sold photographs. However, he reiterates his claims that New 803 is inconsistent with Section 506 of the Administrative Code of 1929,[2] with Pennsylvania's Obscenity Statute (Criminal Obscenity Statute), 18 Pa. C.S. §5903, and with the U.S. and Pennsylvania Constitutions.

DOC filed preliminary objections to the amended petition, asserting: (1) Key lacks standing to sue under the provision of the Pennsylvania Constitution upon which he relies; (2) Key's challenge to the prior version of DC-ADM 803 is moot in light of the changes set forth in New 803; and, (3) the amended petition is legally insufficient to state a cognizable claim.

Key filed preliminary objections to DOC's preliminary objections, asking that this Court strike DOC's preliminary objections for failure to comply with the verification requirements of Pa. R.C.P. Nos. 76 (defining "verified") and 1024(a) ("Verification"). The parties' preliminary objections are now before us for disposition.[3]

_____

[2] Act of April 9, 1929, P.L. 177, as amended, 71 P.S. §186.

[3] In ruling on preliminary objections, this Court accepts as true all well-pled allegations of material fact, as well as all inferences reasonably deducible from those facts. Christ the King Manor v. Dep't of Pub. Welfare, 911 A.2d 624 (Pa. Cmwlth. 2006) (en banc). However, this Court need not accept unwarranted inferences, conclusions of law, argumentative allegations, or

2

## II. Discussion
### A. Key's Preliminary Objections to DOC's Preliminary Objections

Initially, we address Key's preliminary objections to DOC's preliminary objections. Through his preliminary objections, Key takes issue with a footnote to paragraph 31 of DOC's preliminary objections, which states, "[i]nmates can and routinely do purchase books from pre-approved vendors." DOC's Prelim. Objs./Suggestion of Mootness to Am. Pet. for Review at 8 n.6. Key asserts that this fact is not of record, and DOC included no verification to support this factual averment. However, the crux of Key's amended petition is a perceived ban on the receipt of catalogues and commercially sold photographs, not the purchase of books. Further, in the challenged footnote, DOC indicates that it included this information "[f]or this Court's edification." Id. We do not interpret any statement in DOC's footnote as an averment of fact subject to the verification requirements of Pa. R.C.P. No. 1024(a). Therefore, we overrule Key's preliminary objections to DOC's preliminary objections.

### B. DOC's Preliminary Objections
### 1. Mootness

For its part, DOC first asserts, to the extent Key brings a challenge to the prior version of DC-ADM 803 concerning inmate possession of catalogues, Key's claim is moot as DOC amended the policy to permit inmates to possess catalogues generally. In response, Key concedes his claims concerning former DC-ADM 803's ban on catalogues and commercially sold photographs, as well as his

---

expressions of opinion. Id. For preliminary objections to be sustained, it must appear with certainty that the law will permit no recovery. Id. Any doubt must be resolved in favor of the non-moving party. Id.

3

challenge to New 803's definition of "catalogue" are moot.  See Pet'r's Br. at 4-6, 8.  Therefore, no further discussion of these issues is necessary.

**2. Demurrer to First Amendment Claim**

DOC next argues the rationale for its anti-pornography policy is constitutionally sufficient under Turner v. Safely, 482 U.S. 78 (1987).  Therefore, it contends, Key cannot prevail on his First Amendment challenge to New 803.

Key responds that his First Amendment rights under the U.S. Constitution are violated by the restriction on what publications he can and cannot receive.

Pennsylvania courts repeatedly recognize that DOC's Policy pertaining to incoming publications containing obscenity passes constitutional muster and is related to the legitimate penological objectives of security and rehabilitation. Brittain v. Beard, 974 A.2d 479 (Pa. 2009); Payne v. Dep't of Corr., 871 A.2d 795 (Pa. 2005); Shore v. Pa. Dep't of Corr., 168 A.3d 374 (Pa. Cmwlth. 2017); Smith v. Beard, 26 A.3d 551 (Pa. Cmwlth. 2011).

Thus, in Smith, this Court explained (with emphasis added):

> The [U.S.] Supreme Court has held that an inmate 'retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.' Pell v. Procunier, 417 U.S. 817, 822 (1974). In Turner, the U.S. Supreme Court reconciled the conflicting principles that prison walls do not separate inmates from Constitutional protections and that courts are ill-suited for running prisons by holding that 'when a prison regulation

4

impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.' Turner, 482 U.S. at 84-85, 89. The Turner court further held that, even if the prison regulation infringed upon a fundamental right, the strict scrutiny usually applied to such rights is not applicable in the prison context. Id. Thus, pursuant to Turner, in assessing a prison regulation courts should determine:

> (1) whether there is a 'valid, rational connection' between the prison regulation and the legitimate governmental interest asserted to justify it; (2) whether alternative means are open to inmates to exercise the asserted right; (3) what impact an accommodation of the asserted constitutional right will have on guards, inmates, and prison resources; and (4) whether there are 'ready alternatives' to the rule that would accommodate prisoners' rights at *de minimus* [sic] cost to penological interests.

Brittain, 974 A.2d at 486 (quoting Turner, 482 U.S. at 89-91).

Consistent with its holding in Turner, the U.S. Supreme Court stated in Overton v. Bazzetta, 539 U.S. 126 (2003), that courts 'must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them.' Id. at 132. Moreover, the U.S. Supreme Court, in Overton, stressed that '[t]he burden ... is not on the State to prove the validity of prison regulations but on the prisoner to disprove it.' Id.

Our Supreme Court has relied upon both Turner and Overton in two cases challenging [DOC] administrative regulations, which were directed, like [former DC-ADM 803] here, at banning pornography in the corrections system. In [Payne], an inmate challenged a prior version of [DC-ADM 803], which prohibited inmates from sending or receiving correspondence containing obscene

5

materials, as violating Article I, Section 7 of the Pennsylvania Constitution. After concluding that the Turner deferential standard was applicable to inmate challenges to prison regulations under the Pennsylvania Constitution, our Supreme Court held that the policy at issue in Payne was presumptively reasonable and that the inmate had not attempted to satisfy his burden of disproving the validity of the policy. Payne, [871 A.2d at 810 n.11]. Accordingly, our Supreme Court granted summary judgment in [DOC's] favor and, in doing so, clarified that 'the question is not whether the curtailment of distribution of obscene materials will remedy the aforementioned institutional concerns, but whether [DOC] reasonably believed that it would do so.' [Id. at 810].

In Brittain, an inmate challenged [DOC's] administrative directive DC–ADM 803-1, which prohibited inmates from possessing pornography … and directed inmates to turn over any pornographic material in their possession, claiming the directive violated the First and Fourteenth Amendment of the [U.S.] Constitution and the Pennsylvania Constitution. Included with the challenge were affidavits from other inmates, who indicated that their rehabilitation and treatment was not hindered by viewing pornography. Brittain, [974 A.2d at 481]. In its answer and new matter, [DOC] asserted numerous penological reasons for the ban on pornography, including the ban being consistent with its goal of rehabilitating the inmate and inmates' treatment objectives, preventing a hostile working environment for [DOC's] employees, preventing employees and inmates from being objectified, and preventing materials that were counter-productive to the goal of sex offender therapy, which is meant to teach inmates to view people as people. Id. The inmate responded by demanding 'strict peer-review scientific-evidence' to support [DOC's] contentions. Id. The inmate and [DOC] filed cross-motions for summary judgment, both of which this Court denied. The Supreme Court considered the matter on an interlocutory appeal by permission. Relying on Overton, Turner, and Payne, the Supreme Court held that [DOC] had stated legitimate penological interests for the ban on pornography, the ban bore a reasonable relationship to

6

those interests and was not an exaggerated response thereto, and the inmate had not 'set forth specific facts that, if believed, would warrant a decision in his favor.' [Id. at 488]. The Supreme Court further noted that [DOC] alleged that: the policy allowed inmates to preserve their pornographic materials by sending them home; accommodating the inmates' asserted constitutional rights to unrestricted access to pornography would, *inter alia*, 'foster a hostile working environment'; and 'there was no other realistic remedy available to [DOC] to address the legitimate government interest in: (1) maintaining a non-hostile work environment …; (2) discouraging inmates from objectifying persons; and (3) impeding inappropriate behavior.' [Id.]. The Supreme Court concluded that [DOC's] policy satisfied the Turner standards and that the inmate had not asserted 'specific facts that, if believed,' would prove the invalidity of the policy and, accordingly, reversed this Court's decision denying [DOC's] Motion for Summary Judgment. [Id. at 488, 490].

Smith, 26 A.3d at 557-58. Reviewing the averments in the inmate's complaint in Smith, this Court agreed with DOC that the averments did not include the specific facts necessary to disprove the penological interests asserted by DOC for DC-ADM 803, which were approved in Brittain and Payne as legitimate and reasonably related to that legitimate interest and satisfying Turner. Because the complaint did not aver specific facts that would raise a legally sufficient challenge to DOC's legitimate penological interests addressed by DC-ADM 803, this Court sustained the preliminary objection to the inmate's First Amendment claim. See also Shore, 168 A.3d at 380 ("Pursuant to Brittain and Smith, DC-ADM 803 and 37 Pa. Code § 93.2 are facially constitutional for purposes of the First Amendment and, like the petitioners in those cases, Shore does not allege any specific facts that tend to undermine [DOC's] legitimate penological interests."). We reach the same result here.

7

To that end, our review of the factual averments set forth in the amended petition reveals that Key does not plead specific facts sufficient to undermine DOC's legitimate penological interests. Therefore, he does not state a cognizable First Amendment claim. Brittain; Shore; Smith.

Moreover, contrary to Key's claims, New 803 does not effectuate a total ban on incoming obscene or sexually explicit publications, and it affords the Incoming Publications Review Committee discretion. Indeed, New 803 expressly provides for discretion to permit certain publications, and it offers guidance in the exercise of that discretion:

> (2) Correspondence **and** publications, containing nudity **or** explicit sexual material **(other than in narrative form)**, as defined in the Glossary of Terms may be permitted if the material has artistic, educational, or medical value. The below listed considerations **will** guide [DOC] in determining whether to permit nudity, explicit sexual material, or obscene material:
>
> (a) Is the material in question contained in a publication that regularly features sexually explicit content intended to raise levels of sexual arousal or to provide sexual gratification, or both? If so, the publication **will** be denied for inmate possession.
>
> (b) Is it likely that the content in question was published or provided with the primary intention to raise levels of sexual arousal or to provide sexual gratification, or both? If so, the publication or content **will** be denied for inmate possession.

DC-ADM 803(E)(3)(c)(2) (attached to DOC's Prelim. Objs.; emphasis by underline added, emphasis by bold in original). Thus, by its plain language, New 803 is not a complete ban on incoming obscene publications, and it allows for discretion.

### 3. Demurrer to Overly Restrictive Nature of New 803

DOC further asserts that Pennsylvania courts already determined New 803 is not more restrictive than the Criminal Obscenity Statute; therefore, Key has not presented a viable claim in this regard.

In response, Key argues the regulation preventing inmates from receiving publications containing nudity and sexually explicit material is more restrictive than the Criminal Obscenity Statute, which only bans for state correctional inmates possession of material that is considered obscene. See 18 Pa. C.S. §5903(a)(8). Specifically, he points to Section 506 of the Administrative Code, which states that agencies and departments are "empowered to prescribe rules and regulations, not inconsistent with the law, for the government of their respective departments .…" 71 P.S. §186 (emphasis added). Key asserts that because New 803 is more restrictive, it is inconsistent with the law and is invalid under the Administrative Code.

Section 506 of the Administrative Code empowers departments, independent administrative boards and commissions, and administrative bodies to promulgate rules and regulations to achieve and advance their respective aims and goals as articulated by the legislature. 71 P.S. §186. One such department is DOC,

9

which is tasked with administering, managing, and supervising the state's penal and correctional facilities, programs, and services.[4]

Promulgated pursuant to the pertinent provisions of the Administrative Code is New 803, which governs inmate mail and incoming publications. New 803 permits inmates to order catalogues, but it limits obscene materials, and photographs containing obscenity, explicit material, or nudity.[5] This "ban," Key contends, is more restrictive than the Criminal Obscenity Statute, and therefore not consistent with the law as required by Section 506 of the Administrative Code. Thus, Key's argument turns on an interpretation of the phrase "not inconsistent with the law." 71 P.S. §186.

Key argues the differences between New 803 and the Criminal Obscenity Statute are sufficient to support a finding that the policy is inconsistent with the law. We disagree, for several reasons.

First, we do not discern a material inconsistency between New 803 and the Criminal Obscenity Statute. This is especially true when comparing the

---

[4] Section 201 of the Administrative Code enumerates the executive officers, administrative departments, and independent administrative boards and commissions charged with performing the executive and administrative work of the Commonwealth. 71 P.S. §61. DOC is one such enumerated entity. Section 901-B of the Administrative Code, added by the Act of December 30, 1984, P.L. 1299, sets forth the general powers and duties of DOC. 71 P.S. §310-1.

[5] "An inmate may not: send or receive … obscene materials." DC-ADM 803(1)(A)(3)(d). "Photographs containing obscenity, explicit sexual material or nudity, as specified in Section 3 are prohibited." DC-ADM 803(1)(A)(14). As discussed above, an express exception to this "ban" allows incoming materials containing nudity, explicit sexual material, or obscene material if the material has artistic, educational or medical value.

discretion exception provision of New 803, quoted above, with the definition of "Obscene" found in the Criminal Obscenity Statute, 18 Pa. C.S. §5903(b).

Second, and more importantly, New 803 was not enacted under authority of the Crimes Code, which includes the Criminal Obscenity Statute. Rather, New 803 was enacted under Sections 506 and 901-B of the Administrative Code. Any minor difference with a statute other than the enabling statute is not of the type which would invalidate New 803.

Consistent with this observation, this Court previously rejected a similar challenge to the prior version of DC-ADM 803 on the ground that it could be more restrictive than the Criminal Obscenity Statute. Smith, 26 A.3d at 561 (sustaining preliminary objection; "Given that inmates' constitutionally-protected rights may be subject to greater restrictions than those of the general public, we agree with [DOC] that simply because [DC-ADM 803] is more restrictive than the [Criminal] Obscenity [Statute], [DC-ADM 803] is not unconstitutionally over restrictive. This is particularly so where our Supreme Court has twice held that [DC-ADM 803], or its predecessors, were reasonably related to legitimate penological interests. Brittain; Payne."). We reach the same conclusion here.

> Under Section 901-B of the Administrative Code, DOC is
>
> established as an administrative department, [and] shall have the powers and duties granted to and imposed upon it by this article and by any other statutory provisions. In addition, [DOC] … shall also have all the powers and duties … related to the administration, management and supervision of penal and correctional facilities, programs and services.

11

71 P.S. §310-1. Section 506 provides that: "The heads of all administrative departments … are hereby empowered to prescribe rules and regulations, not inconsistent with the law, for the government of their respective departments …." 71 P.S. §186. A regulation governing the inmate mail system is consistent with these provisions, which expressly permit DOC to enact rules and regulations for the management and supervision of penal correctional facilities. In sum, we cannot conclude New 803 is materially inconsistent with or in violation of the enabling statute, Section 506 of the Administrative Code.

### 4. Demurrer to Claim Regarding Forwarding of Publications

DOC also maintains that Key fails to state a First Amendment claim based on his inability to send rejected publications to his home. DOC contends Key's claim is actually rooted in procedural due process rather than First Amendment protections.

Key responds that the requirement that publications must be destroyed or returned violates his First Amendment rights by violating his right to receive the materials. He cites Griswold v. Connecticut, 381 U.S. 479 (1965), for the proposition that the First Amendment includes the right to distribute literature and to teach.

Initially, we disagree with DOC's contention that Key's claim is based in due process rather than his First Amendment protections. Due Process requires notice and opportunity to be heard. Local 85 of Amalgamated Transit Union v. Port Auth., 840 A.2d 506 (Pa. Cmwlth. 2004). New 803 provides an inmate with a grievance review process following the rejection of any material that arrives in the

12

mail, including publications that feature nudity or are sexually explicit. Key does not challenge the adequacy of this process. Instead, he asserts his First Amendment rights were violated by the requirement that rejected mail be returned to the sender. Key alleges no claim grounded in due process.

Instead, we examine DOC's argument against a First Amendment backdrop. New 803 states that if incoming correspondence is determined to be undeliverable for any reason, it shall be marked appropriately and returned to sender at the inmate's expense, destroyed, held for investigation, held as evidence or otherwise disposed of properly. DC-ADM 803(1)(A)(6)(e), (10). It is important to note exactly what Key is prevented from accomplishing under New 803. New 803 does not provide a mechanism by which an inmate may have rejected publications forwarded to his home address. However, New 803 does not prevent an inmate from ordering the same materials to be delivered to his home address. Brittain. Instead, New 803 only prohibits the forwarding of those materials from the prison at which they were rejected. Thus, we discern no infringement on Key's rights to distribute literature or teach. As such, Key fails to state a First Amendment claim in that regard.

**5. Demurrer to Claim Under Article I, Section 7 of Pennsylvania Constitution**

Finally, DOC argues Key lacks standing to bring a freedom of the press claim under Article I, Section 7 of the Pennsylvania Constitution, as he is not a member of the press. DOC asserts Key has no claim based in fact or law in this regard.

Key responds that New 803's requirement that rejected publications be returned to the vendor and not forwarded to an inmate's home, violates his rights under Article I, Section 7 of the Pennsylvania Constitution.

Article I, Section 7 of the Pennsylvania Constitution (entitled "Freedom of Press and Speech; Libels") provides, in relevant part:

> The printing press shall be free to every person who may undertake to examine the proceedings of the legislature or any branch of government, and no law shall ever be made to restrain the right thereof. The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write, and print on any subject, being responsible for the abuse of that liberty. …

PA. CONST. art. I, §7.

Key is not a member of the press. Further, he does not allege that he was prevented from freely speaking, writing or printing on any subject. As indicated above, nothing in New 803 prevents Key from ordering materials from a vendor for shipment to his home. Brittain. Key is merely not afforded the means to forward rejected materials from the prison. New 803's provision that prevents rejected materials from being mailed to Key's home address does not violate his rights under Article I, Section 7 of the Pennsylvania Constitution. Payne (rejecting prisoners' claim that Criminal Obscenity Statute and former DC-ADM 803 violate Article 1, Section 7 of the Pennsylvania Constitution).

14

### III. Conclusion

For all the foregoing reasons, we overrule Key's preliminary objections to DOC's preliminary objections, we sustain DOC's preliminary objections to the amended petition, and we dismiss the amended petition with prejudice.

 

 

 

_____

ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brandon Key,                           :
                        Petitioner     :
                                       :
          v.                           :     No. 371 M.D. 2015
                                       :
The Pennsylvania Department            :
of Corrections,                        :
                        Respondent     :

# **O R D E R**

**AND NOW**, this 10th day of April, 2018, the preliminary objections of the Pennsylvania Department of Corrections are **SUSTAINED**. Petitioner Brandon Key's preliminary objections to the Pennsylvania Department of Corrections' preliminary objections are **OVERRULED**. Petitioner Brandon Key's Amended Petition for Review is **DISMISSED, with prejudice**.

_____
ROBERT SIMPSON, Judge