# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| J.S.C. and J.A.M., | : |
| | : |
| Petitioners | : |
| | : |
| v. | : No. 678 M.D. 2019 |
| | : Argued: November 10, 2020 |
| Pennsylvania Department of Human | : |
| Services and Teresa Miller in her | : |
| official capacity as Secretary, | : |
| Pennsylvania Department of Human | : |
| Services, | : |
| | : |
| Respondents | : |

BEFORE: HONORABLE MARY HANNAH LEAVITT, President Judge[1]
HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE P. KEVIN BROBSON, Judge[2]
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE J. ANDREW CROMPTON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                            FILED: January 7, 2021

---

[1] The decision in this case was reached before January 4, 2021, when President Judge Leavitt served as President Judge.

[2] The decision in this case was reached prior to January 4, 2021, when Judge Brobson became President Judge.

Before the Court are the preliminary objections (POs) in the nature of a demurrer of the Pennsylvania Department of Human Services and Teresa Miller, Secretary of the Department (Secretary) (collectively, DHS) and intervenor Berks County (County)[3] to the petition for review filed by J.S.C. and J.A.M. (collectively, Petitioners) seeking declaratory and injunctive relief on the basis that the County and DHS did not have the legal authority to enter into a court-approved stipulation or request a stay that allowed the Berks County Residential Center (Center) to remain open and operating pending litigation regarding DHS's revocation of the Center's required annual Certificate of Compliance (Certificate). We sustain the POs and dismiss the petition for review.

The background of this case has been summarized by this Court in one of the number of prior related actions as follows:

> In 2001, [the County] signed an intergovernmental service agreement with the Department of Homeland Security, Immigration Customs Enforcement (ICE), to operate the Center. Subsequently, DHS licensed the Center to operate as a Child Residential and Treatment Facility (child residential facility) pursuant to the regulations found at 55 Pa. Code §§3800.1-3800.312.3. The purpose of these regulations is to protect the health, safety and well-being of "children receiving care in a child residential facility through the formulation, application and enforcement of minimum licensing requirements." 55 Pa. Code §3800.1. To that end, a child residential facility must obtain and maintain a [Certificate] from DHS. 55 Pa. Code §3800.11. A [Certificate] is a "document issued to a legal entity permitting it to operate a *specific* type of facility or agency, at a given location, for a specified period of time, and according to *appropriate* Departmental program

---

[3] By June 4, 2020 order, we granted the County's petition to intervene in this case.

2

license or approval regulations." 55 Pa. Code §20.4 (emphasis added).

Notwithstanding the Center's licensure as a child residential facility, it is one of three immigration detention facilities in the United States that provides residential family housing to undocumented immigrant families seeking asylum while ICE enforces federal immigration laws. Consequently, [the p]etitioners include [] children and adults formerly housed at the Center. In addition, [the p]etitioners include Aldea[-The People's Justice Center (Aldea)], a nonprofit organization based in Reading, Pennsylvania, that assists [the p]etitioners.

In general, DHS renewed the Center's license from 2001 to 2015. More specifically, when the Center moved to a new location in 2013, it relinquished the existing [C]ertificate and applied for a new one. In February 2013, DHS granted the [C]ertificate for the new location. Thereafter, [the County] renovated part of the Center and sought to increase the capacity. In October 2015, DHS advised that it was postponing a decision on the Center's request to increase the capacity. In November 2015, the Center submitted its application for renewal of its [C]ertificate for 2016-17. Although DHS initially granted the renewal application and issued [the Certificate], DHS subsequently issued a November 2015 letter "rescinding" its actions. In January 2016, DHS advised the Center of the decision to revoke the [Certificate] for 2016-17 and to deny the request to increase capacity. DHS based its decision on "a determination that [the Center] was not operating as a child residential facility under [DHS's] regulations, but rather . . . operating as a residential center for the detention of immigrant families including adults."

In February 2016, the Center appealed. Although the [DHS's Bureau of Hearings and Appeals (Bureau)] held a November 2016 hearing, the appeal remained pending. Consequently, [the County] filed a January 2017 petition for review in the nature of mandamus and special relief against the [Secretary] and DHS in this

3

Court's original jurisdiction at [*The County of Berks v. Dallas* (Pa. Cmwlth., No. 8 M.D. 2017),] seeking an order from this Court (1) compelling DHS to respond to the Center's application for a 2016-17 [C]ertificate; and (2) directing that DHS be precluded from taking action against the Center thereby maintaining the status quo of its current [C]ertificate pending the outcome of this matter and any appeals. Subsequently, Senior Judge Leadbetter held a status conference after which a February 3, 2017, document styled "stipulation and order" was entered permitting the Center to continue operating despite the imminent February 2017 expiration of its [C]ertificate for purposes of maintaining the status quo during the pendency of the appeal of the license revocation before the Bureau (Case No. 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) and the mandamus action before this Court [in *Dallas*].[4]

In April 2017, an administrative law judge (ALJ) sustained the Center's appeal of the revocation of the 2016-17 license. DHS filed an application for reconsideration, which was granted. In January 2018, DHS entered an order setting aside the decision and remanding the appeal for issuance of a new adjudication with the option of reopening the hearing record or adjudicating based on the existing record. The Center requested reconsideration, which was denied in March 2018.

* * *

While the litigation pertinent to the Center's application for 2016-17 was ongoing, the Center filed its application for 2018-19. When DHS failed to respond, the Center filed a January 2018 petition for review in the nature of mandamus and special relief against the Secretary and DHS at [*The County of Berks v. Miller* (Pa.

---

[4] *See generally Department of Public Welfare v. Maplewood Manor Convalescent Center, Inc.*, 650 A.2d 1117, 1119 (Pa. Cmwlth. 1994) ("*See* Pa. R.C.P. No. 229 (parties may settle and discontinue cases). Under Pa. R.C.P. Nos. 2039(a), 2206(a), 2064, and 2230(b), the power of parties to settle and discontinue cases is subject to court approval where the matter concerns a minor, an incompetent, or a class action.").

Cmwlth., No. 13 M.D. 2018),] seeking an order compelling DHS to act on the 2018-19 application and a request for a preliminary injunction. Ultimately, Judge Brobson issued a January 2018 order staying the action pending disposition of the administrative appeal involving the 2016-17 application.

In December 2019, this Court issued orders providing that Senior Judge Leadbetter's February 2017 stay in [*Dallas*] and Judge Brobson's January 2018 stay in [*Miller*] shall remain in effect. In addition, we directed that the next status reports be submitted within ten days of the Bureau's decision addressing DHS's January 2018 order or by March 9, 2020, whichever occurs earlier.[5]

*D.G.A. v. Department of Human Services* (Pa. Cmwlth. No. 1059 C.D. 2018, filed January 21, 2020), slip op. at 2-6 (citations to the record and footnotes omitted).[6]

---

[5] On October 5, 2020, in *Dallas*, upon consideration of the parties' September 2020 Joint Status Report, and because the Bureau has not yet issued a decision, we ordered that the 2017 Stipulation remain in effect and directed the parties to file another status report within 10 days of the Bureau's decision or by January 3, 2021, whichever occurs earlier. That same day, a similar order was issued in *Miller*.

[6] This Court may take judicial notice of official court records and public documents at the preliminary objection stage. *See* Pa. R.E. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Williams v. Department of Corrections* (Pa. Cmwlth., No. 448 M.D. 2013, filed February 17, 2016), slip op. at 6 n.11 (holding that while the petitioner did not append the trial court's judgment of sentence to his petition for review, this Court would take judicial notice of it from the docket entries of his direct appeal to Superior Court in the matter); *Doxsey v. Pennsylvania Bureau of Corrections*, 674 A.2d 1173, 1174 (Pa. Cmwlth. 1996) (taking judicial notice of copies of official criminal court records, which the respondent had attached to its preliminary objection); *Styers v. Bedford Grange Mutual Insurance Company*, 900 A.2d 895, 899 (Pa. Super. 2006) (holding that a court may take judicial notice of a fact "which is incorporated into the complaint by reference to a prior court action") (citation omitted). *See also* 210 Pa. Code §69.414(a) ("Parties may also cite an unreported panel decision of this Court issued after January 15, 2008, for its persuasive value, but not as binding precedent.").

Petitioners filed this action seeking declaratory and injunctive relief to close the Center because the parties could not enter into the 2017 Stipulation in *Dallas*, and the 2018 Stay in *Miller*, which allows the Center to remain in operation pending that litigation involving its previously-revoked Certificate. In response, DHS and the County filed the POs in the nature of a demurrer,[7] arguing that Petitioners have failed to state a claim upon which relief may be granted.

As a preliminary matter, this Court has explained:

> Petitions for declaratory judgments are governed by the provisions of the Declaratory Judgments Act [(DJA)], 42 Pa. C.S. §§7531-7541. Although the [DJA] is to be liberally construed, one limitation on a court's ability to issue a declaratory judgment is that the issues involved must be ripe for judicial determination, meaning that there must be the presence of an actual case or controversy. Thus, the [DJA] requires a petition praying for declaratory relief to state an actual controversy between the petitioner and the named respondent.

> Declaratory judgments are not obtainable as a matter of right. Rather, whether a court should exercise jurisdiction over a declaratory judgment proceeding is a matter of sound judicial discretion. Thus, the granting of a petition for a declaratory judgment is a matter lying within the sound discretion of a court of original jurisdiction.

---

[7] Pa. R.C.P. No. 1028(a)(4) states: "(a) Preliminary objections may be filed by any party to any pleading and are limited to the following grounds: . . . (4) legal insufficiency of a pleading (demurrer)[.]" In reviewing preliminary objections, we must accept as true all well-pled allegations of material facts, as well as all inferences reasonably deducible from those facts. *Key v. Pennsylvania Department of Corrections*, 185 A.3d 421, 423 n.3 (Pa. Cmwlth. 2018). However, this Court is not required to accept as true any unwarranted factual inferences, conclusions of law, or expressions of opinion. *Id.* Only where the pleading is "facially devoid of merit" should the demurrer be sustained. *Wurth by Wurth v. City of Philadelphia*, 584 A.2d 403, 406 (Pa. Cmwlth. 1990) (citation omitted). It must be clear that the law will not permit recovery, and any doubt must be resolved in favor of the non-moving party. *Key*.

6

*Brouillette v. Wolf*, 213 A.3d 341, 357 (Pa. Cmwlth. 2019) (citations omitted). "[A]n action seeking declaratory judgment is not an optional substitute for established or available remedies and should not be granted where a more appropriate remedy is available." *Pittsburgh Palisades Park, LLC v. Pennsylvania State Horse Racing Commission*, 844 A.2d 62, 67 (Pa. Cmwlth. 2004) (citation omitted).

In the instant petition for review, Petitioners are collaterally attacking the legality of this Court's orders in *Dallas* and *Miller* as nonparties to those proceedings, which permit the Center to operate under its Certificate while its revocation is on appeal with the Bureau.[8] Petitioners are arguing that this Court should disregard our prior valid and enforceable orders issued in those matters maintaining the status quo therein because the County and DHS did not have the authority to enter into the stipulations underlying the orders in the first instance.

However, Petitioners do not have a clear right to declaratory and injunctive relief herein because DHS has the authority to enter into the stipulated stays in those proceedings. *See generally Department of Public Welfare v. UEC, Inc.*, 397 A.2d 779, 786 (Pa. 1979) (recognizing the Department of Public Welfare's (Department)[9] authority to enter into a "compromise and settlement" agreement to settle a dispute based on the purported breach of written and oral

---

[8] *See, e.g.*, *Engle v. Beaver County*, 754 A.2d 729, 732 (Pa. Cmwlth. 2000) (holding that a former stranger to an action is not permitted to insert himself into proceedings at the trial level or on appeal through a voluntary substitution by claiming that he has a similar interest or that he could have pursued a similar action in his own right).

[9] The Department of Public Welfare was redesignated as DHS by Section 103(a) of the Human Services Code, Act of June 13, 1967, P.L. 31, *as amended*, added by the Act of September 24, 2014, P.L. 2458, 62 P.S. §103(a).

contracts); *Department of Public Welfare v. Maplewood Manor Convalescent Center, Inc.*, 650 A.2d 1117, 1118-20 (Pa. Cmwlth. 1994) (holding that the Commonwealth's Board of Claims had no authority to investigate the reasonableness of, or to modify the terms of, a stipulation entered by the Department and a nursing home resolving a dispute involving the reimbursement for services rendered through the Medical Assistance program).

Moreover, both this Court and the parties are bound by our prior orders in *Dallas* and *Miller* maintaining the status quo in those matters throughout the pendency of that ongoing litigation. *See, e.g.*, *Domagalski v. Szilli*, 812 A.2d 747, 750 n.2 (Pa. Cmwlth. 2002) (citations omitted) (stating that when no petition for reconsideration from a single-judge order of this Court is filed, that order is binding unless it is palpably erroneous or it implicates subject matter jurisdiction).[10]

Finally, and quite importantly, unlike the petitioners in *D.G.A.*, who were also formerly housed at the Center, Petitioners herein have not sought to intervene in the underlying Certificate revocation proceedings before the Bureau. *See D.G.A.*, slip op. at 13-16 (holding that the Bureau abused its discretion in denying the petitioners' petition to intervene in those proceedings pursuant to Section 35.28(a)(2) and (3) of the General Rules of Administrative Practice and Procedure (GRAPP),[11] reversing the Bureau's order denying the petitioners'

---

[10] In this regard, Petitioners' reliance on *George A. Fuller Co., Inc. v. City of Pittsburgh*, 327 A.2d 191, 193 (Pa. Cmwlth. 1974), and *DeCarbo v. Borough of Ellwood City*, 284 A.2d 342, 344 (Pa. Cmwlth. 1971), is misplaced because neither of those cases involved the validity of a court-approved stipulation staying proceedings in that same court.

[11] 1 Pa. Code §35.28(a)(2), (3). Section 35.28(a)(2) and (3) of the GRAPP states, in relevant part:

**(Footnote continued on next page…)**

8

petition to intervene, and remanding the matter to the Bureau with directions to permit the petitioners' intervention).

As this Court has stated:

> A party challenging administrative decision-making that has not exhausted its administrative remedies is precluded from obtaining judicial review by mandamus or otherwise. The primary purpose of the exhaustion doctrine is to ensure that claims will be heard, as a preliminary matter, by the body having expertise in the area. It further provides the agency with the opportunity to correct its own mistakes and to moot judicial controversies.

*Matesic v. Maleski*, 624 A.2d 776, 778 (Pa. Cmwlth. 1993) (citations omitted). Because Petitioners have failed to intervene in the underlying Certificate revocation proceedings before the Bureau, unlike the petitioners in *D.G.A.*, the

---

**(continued…)**

> (a) *Persons*. A petition to intervene may be filed by a person claiming a right to intervene or an interest of such nature that intervention is necessary or appropriate to the administration of the statute under which the proceeding is brought. The right or interest may be one of the following:
>
> * * *
>
> (2) An interest which may be directly affected and which is not adequately represented by existing parties, and as to which petitioners may be bound by the action of the agency in the proceeding. The following may have an interest: consumers, customers or other patrons served by the applicant or respondent[.]
>
> (3) Other interest of such nature that participation of the petitioner may be in the public interest.

instant action seeking declaratory and injunctive relief should be dismissed on this alternative basis as well.

Accordingly, the POs in the nature of a demurrer are sustained and the petition for review is dismissed.

                                                            _____

MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

J.S.C. and J.A.M.,                              :
                                                :
                        Petitioners             :
                                                :
            v.                                  :  No. 678 M.D. 2019
                                                :
Pennsylvania Department of Human                :
Services and Teresa Miller in her               :
official capacity as Secretary,                 :
Pennsylvania Department of Human                :
Services,                                       :
                                                :
                        Respondents             :


# **O R D E R**


AND NOW, this 7th day of January, 2021, the preliminary objections of the above-named Respondents and Berks County as Intervenor are SUSTAINED, and the petition for review is DISMISSED.


_____
MICHAEL H. WOJCIK, Judge