IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Vito A. Pelino, : 
            Petitioner : 
             : 
             : 
       v. : No. 221 M.D. 2022
             : 
Captain Kennedy and Tracey : 
Shawley, : 
            Respondents : Submitted: October 10, 2023

BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CEISLER                      FILED:  November 2, 2023

Currently before us are Respondents Captain Kennedy and Tracey Shawley's (individually Kennedy and Shawley, and collectively Respondents) preliminary objections to Petitioner Vito A. Pelino's (Petitioner) "Amended Petition for Review Seeking Declaratory and Injunctive Relief" (Amended Petition). Petitioner, an inmate currently incarcerated within our Commonwealth's prison system at State Correctional Institution (SCI)-Greene, alleges in his Amended Petition that Respondents retaliated against him because he was negotiating the settlement of a civil rights suit he had filed against other Department of Corrections (DOC) personnel in federal court.[1] Upon review, we overrule Respondents' preliminary objections and direct them to answer the Amended Petition within 30 days.

---

[1] Petitioner identifies his civil rights lawsuit as having been filed in the United States District Court for the Western District of Pennsylvania under the following caption and docket number: "*Pelino v. Gilmore, et al.*, Civil Action No. 2:18-cv-01232-DSC-MPK." Am. Pet. at 1, 3 (Petitioner did not individually number the paragraphs in his Amended Petition, so we elect to cite **(Footnote continued on next page…)**

## I. Background

The relevant facts, as gleaned from Petitioner's Amended Petition and this matter's procedural history, are as follows. On July 14, 2021, Kennedy issued a misconduct report, in which Kennedy stated that, according to a SCI-Greene correctional officer identified as "CO Journic," Petitioner had refused to work at his prison job and had declined to obey an order from prison staff. Am. Pet. at 2, Ex. A. Kennedy deemed Petitioner's behavior to constitute a Class 1 misconduct, and "referred" the matter "to Unit Commander for informal resolution." *Id.*, Ex. A. Petitioner remained unaware of this misconduct report, however, until July 21, 2021, when Shawley, the Unit Manager of C-Block at SCI-Greene, presented it to him during the course of an informal resolution proceeding, regarding which Petitioner was given little or no advance notice. *Id.* at 2; *see id.*, Exs. B, F. Shawley concluded that the misconduct report stemmed from a "misunderstanding" between Petitioner and staff at SCI-Greene, but nevertheless punished Petitioner by restricting him to his cell for two days. *Id.* at 4-5, Ex. B. Petitioner then challenged this misconduct through the DOC's internal misconduct appeal and grievance processes, but his efforts were ultimately unsuccessful. *Id.* at 2-3, Exs. C-E.

Petitioner reacted to this by filing a Petition for Review in our Court on April 8, 2022, followed by his Amended Petition on October 12, 2022. In his Amended Petition, Petitioner alleges that Respondents' issuance of the aforementioned misconduct, handling of the informal resolution proceeding, and consequent issuance of punishment were in retaliation against him for his federal civil rights

---

thereto using page numbers). In that action, Petitioner "claim[ed] that a policy of video recording strip searches at SCI-Greene violate[d] his Fourth Amendment rights[, U.S. CONST. amend. IV]. He also claim[ed] that [the named] [d]efendants [in that action] retaliated against him for filing th[e] lawsuit, in violation of his First Amendment rights[, U.S. CONST. amend. I]." *Pelino v. Gilmore* (W.D. Pa. No. CV 18-1232, filed Dec. 18, 2020), 2020 WL 9264961, at *1.

lawsuit, thereby infringing upon his First Amendment right to access the courts, and in contravention of DOC's administrative regulations and policies. *Id.* at 3-5. As relief, Petitioner requests a declaratory judgment confirming these assertions, as well as injunctive relief compelling Respondents to grant the internal appeal he filed regarding the misconduct and to remove the charges made therein from his prison record, as well as prohibiting Respondents from citing him again for the same alleged conduct that gave rise to the original misconduct. *Id.* at 5.[2]

Respondents then filed preliminary objections to the Amended Petition on February 1, 2023. Petitioner then replied in opposition thereto on February 13, 2023. The parties subsequently filed briefs in support of their respective positions and, consequently, the preliminary objections are now ready for disposition.

## II. Discussion

Respondents present what amounts to two arguments for our consideration, which we summarize as follows. First, this Court lacks appellate jurisdiction over the Amended Petition, because the decision to issue an inmate misconduct does not constitute an adjudication that is subject to appellate review. Respondents' Br. at 7-8. Second, they demur to the Amended Petition on the basis of Petitioner's putative

---

[2] Though Petitioner does not expressly state in his Amended Petition that he makes his First Amendment claim pursuant to 42 U.S.C. § 1983, we nevertheless conclude that this is the case. Enacted as part of the Civil Rights Act of 1871, this statute allows individuals to sue a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]" 42 U.S.C. § 1983.

failure to state a viable retaliation claim. *Id.* at 7-12.[3] We address each of these arguments in turn.[4]

Respondents' first argument is entirely misplaced. It is true that "[i]nmate misconducts are a matter of internal prison management and, thus, do not constitute adjudications subject to appellate review." *Hill v. Dep't of Corr.*, 64 A.3d 1159, 1167 (Pa. Cmwlth. 2013). However, Petitioner does not seek to invoke our appellate jurisdiction in this matter. To the contrary, he expressly states that he filed his Amended Petition pursuant solely to our *original jurisdiction*. *See* Am. Pet. at 1 (citing 42 Pa. C.S. § 761(a)(1), which confers original jurisdiction to this Court over certain kinds of "civil actions or proceedings[,]" as the jurisdictional hook for his lawsuit). Respondents' preliminary objection to our appellate jurisdiction in this matter is therefore baseless, as it pertains to a jurisdictional argument that Petitioner did not make in his Amended Petition. *See* Petitioner's Br. at 7 ("Respondents misconstrue Petitioner's intent. Petitioner did not intend the [Amended Petition] as

---

[3] Respondents asserted in their preliminary objections that "[i]t appears that [Petitioner] is [also] pursuing a due process claim relative to the misconduct procedures and subsequent cell restriction[,]" and maintained that Petitioner had failed to put forth a legally viable claim of that nature. Prelim. Objs. ¶¶32-35. However, Respondents failed to make any mention of this putative due process claim in their subsequent brief, so we consider that argument against the Amended Petition to have been abandoned and, consequently, will not address its merits.

[4] In ruling on preliminary objections, this Court accepts as true all well-pled allegations of material fact, as well as all inferences reasonably deducible from those facts. *Key v. Pa. Dep't of Corr.*, 185 A.3d 421 (Pa. Cmwlth. 2018). However, this Court need not accept unwarranted inferences, conclusions of law, argumentative allegations, or expressions of opinion. *Id.* For preliminary objections to be sustained, it must appear with certainty that the law will permit no recovery. *Id.* Any doubt must be resolved in favor of the non-moving party. *Id.*

*Feliciano v. Pa. Dep't of Corr.*, 250 A.3d 1269, 1274 (Pa. Cmwlth. 2021).

4

an appeal of the misconduct. Petitioner sought this Court's review of the misconduct charges, proceedings, and appeals process to argue that these actions were retaliat[ory].").

As for Respondents' remaining argument, it contains two subparts. In the first portion, Respondents object to Petitioner's retaliation claim on the basis that he has failed to plead facts showing that they were personally involved in the unlawful acts that were allegedly perpetrated against him. Respondents' Br. at 8-10. Respondents admit that they "participated in the issuance and appeal of the misconduct/informal resolution[,]" but maintain that this is insufficient to establish their "personal involvement in the alleged wrongdoing[,]" because there is no proof they were directly involved with or knew of Petitioner's civil rights action in federal court. *Id.* at 9-10.

We, however, disagree with how Respondents prefer to characterize the nature of their involvement. It is well settled that "liability [in a Section 1983 action] cannot be predicated on the operation of *respondeat superior.*" *Bush v. Veach*, 1 A.3d 981, 986 (Pa. Cmwlth. 2010) (citing *Rode v. Dellarciprete,* 845 F.2d 1195 (3d Cir. 1988)). For liability to attach in such an action, the party who brought the lawsuit must establish that each defendant had "personal involvement in the alleged wrongs[.] . . . [P]ersonal involvement can be shown through allegations of personal direction or actual knowledge and acquiescence, but the allegations must be made with appropriate particularity." *Id.* In this instance, the wrongdoing alleged by Petitioner consists of the misconduct report's issuance, with which Kennedy was directly involved, and the consequent punishment that was levied against him by Shawley. *See* Am. Pet. at 2-5, Exs. A-B. Petitioner's averments therefore clearly satisfy Section 1983's personal involvement prerequisite.

In the second portion, Respondents argue that, even assuming that the direct involvement requirement is satisfied, Petitioner has nevertheless failed to state a viable retaliation claim. Respondents' Br. at 10-12. An inmate can successfully establish a viable First Amendment-based retaliation claim at this stage of litigation by pleading facts in their lawsuit that facially establish that "[(1) they] engaged in constitutionally protected conduct[; (2)] prison officials took adverse action[; (3)] the protected conduct was a substantial or motivating factor for the action . . . [; and (4)] the retaliatory action [did] not advance legitimate penological goals." *Yount v. Dep't of Corr.*, 966 A.2d 1115, 1120-21 (Pa. 2009). "A claim of retaliation is insufficiently pled where the prisoner merely alleges that he was charged and found guilty of misconduct. Otherwise, under the guise of claiming retaliation, we would turn a case filed in our original jurisdiction into a thinly disguised impermissible appeal of the decision on the misconduct conviction." *Brown v. Blaine*, 833 A.2d 1166, 1171 n.11 (Pa. Cmwlth. 2003).

Regarding the first prong of this test,

> [t]hough "confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment," *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977), it is equally true that "incarceration does not divest prisoners of all constitutional protections." *Shaw v. Murphy*, 532 U.S. 223, 228 (2001). Accordingly, "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).

*Id.* at 423. One of these retained rights is the freedom to access the courts, which necessarily includes the ability to file lawsuits. *Bush*, 1 A.3d at 985. Petitioner has thus satisfied the first prong, as his pursuit of a civil rights lawsuit in federal court

against SCI-Greene personnel was undoubtedly a form of constitutionally protected conduct.

As for the second prong,

> an "'[a]dverse action,' for purposes of evaluating an inmate's retaliation claim, is one which is 'sufficient to deter a person of ordinary firmness from exercising his [constitutional rights.]'" *Yount*, 966 A.2d at 1121 (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)). Generally speaking, allegedly retaliatory conduct does not constitute adverse action unless it would have more than a *de minimis* impact upon such a person's willingness to exercise those rights. *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006).[] . . . "Where a plaintiff advances a colorable, but not necessarily incontrovertible, argument he was subjected to adverse action, the issue is best resolved by the fact-finder." *Yount*, 966 A.2d at 1121 (citing *Allah*, 229 F.3d at 225).

*Nunez v. Blough*, 283 A.3d 413, 423 (Pa. Cmwlth. 2022) (footnote omitted). Here, Petitioner was restricted to his cell for two days as punishment for the misconduct citation. *See* Am. Pet. at 4-5, Ex. B. At first blush, this would appear to be a slap on the wrist, so to speak, that would have a minimal impact upon the resolve possessed by a person of ordinary firmness. However, this assessment becomes less ironclad when factoring in the potential downstream effects of this punishment that were mentioned by Petitioner. While corresponding with the DOC attorney who was assigned to his federal civil rights action, Petitioner stated that other inmates at his facility have been denied parole solely because of misconducts like his that were informally handled. *Id.*, Ex. F. Petitioner also asserted in that same correspondence that the punishment he received and the underlying misconduct would be used by SCI-Greene staff as justification for preventing him from continuing to work in the correctional facility's library. *Id.* Additionally, Petitioner avers in the body of the Amended Petition itself that "[Respondents'] actions . . . have fraudulently tarnished

7

an otherwise nearly spotless prison record, which if left uncorrected, would je[o]p[a]rdize [his] chances for commutation once [he] becomes eligible." *Id.* at 5. In other words, Petitioner has pled facts that characterize the punishment he received as being of the type that could result in him being deprived of a valuable inmate privilege that he currently possesses; has prevented others from being paroled; and would potentially deprive him of the ability to have his carceral sentence commuted. Such concerns would likely have more than a *de minimis* impact upon a person of ordinary firmness' willingness to exercise their constitutional rights. As such, we conclude that Petitioner has put forth a colorable allegation that Respondents subjected him to adverse action and, thus, that he has facially satisfied the second prong's requirements.

Turning to the third prong,

> there are two methods by which an inmate can establish that their constitutionally protected activity was a substantial or motivating factor behind adverse action in a retaliation case. First, the inmate can show that the "timing of the alleged retaliatory action is unusually suggestive of retaliatory motive." *Yount*, 966 A.2d at 1122 (quoting *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997)) (cleaned up). Second, and in the alternative, the inmate can set forth "a pattern of antagonism coupled with timing that suggests a causal link" between the adverse action and the inmate's efforts to exercise their constitutional rights. *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016). "Moreover, causation, like any other fact, can be established from the evidence gleaned from the record as a whole." *Id.* at 424.

*Nunez*, 283 A.3d at 424-25. Here, Petitioner states that both the misconduct report was issued and the resultant punishment was meted out while he was in the midst of settlement negotiations with DOC attorneys regarding his federal court civil rights action. Am. Pet. at 2, 4. Petitioner also maintains that Respondents did not present

8

him with the misconduct report until a week after Kennedy had issued it, and that he was unaware of the report's existence, or of the charges contained therein, until Shawley provided him with a copy during the course of the informal resolution proceeding. *Id.* at 2, 4, Ex. F. Given this, we conclude that Petitioner has pled facts that facially establish a sufficient temporal nexus between his constitutionally protected conduct and Respondents' allegedly retaliatory behavior.

Finally, in the context of the fourth prong,

> an inmate must, at minimum, aver facts from which an inference could be drawn that the retaliatory actions did not further a legitimate penological goal. *Richardson v. Wetzel*, 74 A.3d 353, 358 (Pa. Cmwlth. 2013). "Claims of retaliation fail if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule." *Horan v. Newingham* (Pa. Cmwlth., No. 2622 C.D. 2015, filed Oct. 24, 2016), slip op. at 9, 2016 WL 6156221, at *5 (quoting *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008)).[] "Thus, a defendant may successfully defend a retaliatory discipline claim by showing some evidence the inmate actually committed a rule violation." *Id.*

*Nunez*, 283 A.3d at 426 (footnote omitted).

Petitioner has, at least at this stage of litigation, satisfied the fourth prong's requirements. He asserts that Kennedy issued the misconduct report but, without explanation, failed to provide Petitioner with a copy of the report or even notify him that he was facing disciplinary charges. Am. Pet. at 2, 4. He also maintains that Shawley conducted the informal resolution proceeding by herself, in violation of DOC policy and regulations; recognized that Petitioner had not actually committed the infractions with which he had been charged; and nevertheless punished him. *Id.* at 4-5. In addition, Petitioner identified Shawley in his communications with DOC counsel as having previously been the personal assistant of a defendant in his federal court civil rights action, while also stating that "[Shawley] was absolutely aware of

9

[his] lawsuits and grievances[, and] was personally named in a few of [his] grievances[].” *Id.*, Ex. F. Taken as true, these averments facially support a conclusion that neither the misconduct itself nor the consequent punishment imposed upon Petitioner furthered a legitimate penological goal.[5]

### III. Conclusion

In accordance with the foregoing analysis, we overrule Respondents' preliminary objections, in full, and direct them to answer the Amended Petition within 30 days.

_____
ELLEN CEISLER, Judge

---

[5] Respondents assert in their brief that the misconduct report constitutes “some evidence” that Petitioner committed the infractions with which he was charged and, thus, that Petitioner cannot satisfy the fourth prong of the retaliation test. *See* Respondents' Br. at 11-12. This argument is entirely tautological and does not withstand even a cursory level of consideration. If the simple fact that a misconduct had been issued was enough to defeat a retaliation claim, then it would be impossible for an inmate to *ever* successfully pursue such a claim; the misconduct itself would have to be treated as proof that its issuance, *i.e.*, the allegedly retaliatory act, furthered a legitimate peneological goal. We, for reasons that should be readily apparent, decline Respondents' invitation to effectively write misconduct-related retaliation claims out of existence.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Vito A. Pelino,                  :
        Petitioner      :
                             :
    v.                    :  No. 221 M.D. 2022
                             :
Captain Kennedy and Tracey  :
Shawley,                      :
        Respondents  :

## **O R D E R**

AND NOW, this 2nd day of November, 2023, it is hereby ordered that Respondents Captain Kennedy and Tracey Shawley's (collectively Respondents) preliminary objections to Petitioner Vito A. Pelino's Amended Petition for Review Seeking Declaratory and Injunctive Relief" (Amended Petition) are OVERRULED. It is FURTHER ORDERED that Respondents shall answer the Amended Petition within 30 days.

                                  _____

                                  ELLEN CEISLER, Judge