# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Travis A. White,            :
           Petitioner      :
           :
           v.            :    No. 508 M.D. 2023
           :    SUBMITTED:  November 7, 2024
PA DOC, SCI Houtzdale Warden    :
Scott Klinefelter, Medical Director,    :
MAT Specialist, Dr. Naji, Dr. Bloom,    :
and Dr. Knowles,            :
           Respondents    :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
               HONORABLE LORI A. DUMAS, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**            **FILED:  March 6, 2025**


        Petitioner Travis A. White, *pro se*, is an inmate at the State Correctional Institution – Houtzdale (SCI-Houtzdale) who has filed a petition for review under the Americans with Disabilities Act[1] (ADA) and the Eighth and Fourteenth Amendments to the United States Constitution[2] by way of Section 1983 of the United

---

[1] 42 U.S.C. §§ 12101-12213.

[2] U.S. Const. amends. VIII, XIV.

States Code, 42 U.S.C. § 1983.[3]  Petitioner seeks injunctive relief[4] against Respondent "PA DOC" (the Pennsylvania Department of Corrections) "so [the Department] will give [him] [Medically Assisted Treatment (MAT) program] medication that [his] body can tolerate"—specifically one not containing naltrexone, such as Suboxone, Subutex, or methadone—for his opiate use disorder.[5]  Pet. for Review, "P.F.R." ¶ 20.

Now before us are the preliminary objections of Respondents Department and personnel of SCI-Houtzdale, Warden Scott Klinefelter (Superintendent Klinefelter[6]), and the person identified as "MAT Specialist" (collectively, Department Respondents), and Dr. Naji, the Medical Director at SCI-Houtzdale[7] to the petition for review.

---

[3] *See* Pet. for Review "P.F.R." ¶ 2.  Petitioner's petition for review does not allege discrete causes of action in separate counts, as required by Pennsylvania Rule of Civil Procedure 1020(a), Pa.R.Civ.P. 1020(a).  However, Respondents have not preliminarily objected to any failure to conform to rule of court.

[4] Petitioner does not, *per se*, ask for a permanent injunction in his petition for review but asserts that he seeks both a preliminary and permanent injunction elsewhere, *see* Petitioner's Response to Department Respondents' Preliminary Objections ¶ 18. This issue is discussed further, *infra*.

[5] In addition to the medications requested by Petitioner, MAT includes administration of medications containing naltrexone.  *See Rokita v. Pa. Dep't of Corr.*, 273 A.3d 1260, 1263 (Pa. Cmwlth. 2022) (*en banc*) [petitioner seeking Vivitrol (naltrexone) through MAT program].

[6] Department Respondents' brief refers to Klinefelter as superintendent rather than warden.

[7] The petition for review in this matter names "Medical Director" and Dr. Naji as Respondents. Dr. Naji identifies himself as medical director for SCI-Houtzdale, as a contracted medical provider for the Department employed by Wellpath, LLC, a private company.  Dr. Naji's Prelim. Objs. ¶ 18.

**(Footnote continued on next page…)**

2

The facts alleged by Petitioner may be summarized as follows.[8] Petitioner is an inmate at SCI-Houtzdale who wishes to be given MAT medications for opiate use disorder, from which he suffers. P.F.R. ¶¶ 1-2, 7. Petitioner "run[s] the risk of death due to cravings and tolerance being so low if relapse occurs"; his addiction causes him depression; and he has attempted suicide. P.F.R. ¶ 3. The opiate use disorder medications that have been offered to him—Vivitrol or Revia[9]—contain naltrexone, which causes him "major depression" and suicidal thoughts.

---

In addition to the preliminary objections before us, the remaining captioned respondents were dismissed on preliminary objections sustained for failure to properly serve the petition for review. *White v. Pa. Dep't of Corr.* (Pa. Cmwlth., No. 508 M.D. 2023, Order filed Aug. 14, 2024) [dismissing Dr. Bloom and Joyce Knowles, CRNP (incorrectly identified in caption as Dr. Knowles)].

[8] We note that

> [i]n ruling on preliminary objections, this Court accepts as true all well-pled allegations of material fact, as well as all inferences reasonably deducible from those facts. *Key v. Pa. Dep't of Corr.*, 185 A.3d 421 (Pa. Cmwlth. 2018). However, this Court need not accept unwarranted inferences, conclusions of law, argumentative allegations, or expressions of opinion. *Id.* For preliminary objections to be sustained, it must appear with certainty that the law will permit no recovery. *Id.* Any doubt must be resolved in favor of the non-moving party. *Id.*

*Feliciano v. Pa. Dep't of Corr.*, 250 A.3d 1269, 1274 (Pa. Cmwlth. 2021) (*en banc*) [quoting *Dantzler v. Wetzel*, 218 A.3d 519, 522 n.3 (Pa. Cmwlth. 2019)].

[9] In the course of his petition for review, Petitioner names several drugs used to treat opiate use disorder. Petitioner avers that "many doctors will tell the Court that Suboxone, Subutex, and methadone are the gold standard for treating opiate use disorder." P.F.R. ¶ 20. The Court takes judicial notice that Subutex and Suboxone are brand names for medications which each contain buprenorphine hydrochloride and that Vivitrol and Revia, as Petitioner states, contain naltrexone. *See* Drugs@FDA: FDA Approved Drugs, https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm (last visited Mar. 5, 2025).

P.F.R. ¶ 4.  Petitioner was in a methadone[10] maintenance program within 60 days before entering prison and provided records indicating that to the Department; and Petitioner avers that this record would be sufficient for other inmates to get Subutex or Sublocade.[11]  P.F.R. ¶ 5.  Petitioner suffers from several physical ailments which the Department has not treated, and MAT would help the pain from those conditions.  P.F.R. ¶ 7.  Petitioner denies that he currently uses drugs, but sometimes relapses because of lack of treatment and uncontrollable urges to use opiates, which MAT would treat.  P.F.R. ¶ 16.  Petitioner avers that the medical professionals at SCI-Houtzdale, including the MAT Specialist, Dr. Naji, and the now-dismissed named respondents "agree that [he] need[s] MAT" (in the form he is seeking), but that it was denied due to Department policy or policies which allow others to use the medications, but prevent him from using a MAT medication other than Vivitrol or Revia for his opiate use disorder.  P.F.R. ¶¶ 6, 19.  Those policies, Petitioner avers, do not permit the Department to give methadone to male inmates or the Subutex or Sublocade because he "came before 2019."  P.F.R. ¶ 6.

Petitioner exhausted his administrative remedies and filed the instant petition for review in our original jurisdiction.  Department Respondents have filed preliminary objections, as has Dr. Naji.  Petitioner has filed responses thereto.  The preliminary objections are now ripe for disposition.

The Department Respondents raise two issues on preliminary objections: (1) whether the Court has jurisdiction over Superintendent Klinefelter

---

[10] Petitioner avers that the Department does not give methadone to male inmates.  P.F.R. ¶ 5.

[11] Sublocade is another treatment for opiate use disorder that contains buprenorphine.  *See* Drugs@FDA: FDA Approved Drugs, https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm (last visited Mar. 5, 2025).

4

and the MAT Specialist as non-statewide actors; and (2) whether Petitioner has failed to state a claim against Department Respondents for which relief can be granted (demurrer). Dr. Naji raises three issues on preliminary objections: (1) whether the Court has jurisdiction over Dr. Naji as a non-statewide officer; (2) whether a mandamus action is improper to compel a discretionary act of a treating medical provider; and (3) whether Petitioner has failed to state a claim for injunctive relief under the ADA or the Eighth Amendment. Additionally, Dr. Naji incorporates by reference the arguments raised by Department Respondents.

### *Jurisdiction over Superintendent Klinefelter, the MAT Specialist, and Dr. Naji*

Department Respondents—on behalf of Superintendent Klinefelter and the MAT Specialist—and Dr. Naji argue that this Court lacks jurisdiction over claims against them because they are non-statewide actors.

This Court's original jurisdiction extends to only a narrow class of cases. *Jones v. Peterman*, 743 A.2d 537 (Pa. Cmwlth. 1999). Section 761(a)(1) of the Judicial Code provides that this Court shall have original jurisdiction in cases asserted against "the Commonwealth government, including any officer thereof, acting in his official capacity . . . ." 42 Pa.C.S. §761(a)(1). For purposes of jurisdiction under 42 Pa.C.S. §761(a)(1), state employees are considered officers of the Commonwealth only if they "perform state[]wide policymaking functions and . . . are charged with the responsibility for independent initiation of administrative policy regarding some sovereign function of state government." *Jones*, 743 A.2d at 538 [quoting *Mickens v. Jeffes*, 453 A.2d 1092, 1093 (Pa. Cmwlth. 1983)].

Nevertheless, Petitioner has pled a claim against the Department, which is an agency of the Commonwealth government. This Court has "ancillary jurisdiction over any claim or other matter which is related to a claim or other matter

5

otherwise within its exclusive original jurisdiction." 42 Pa.C.S. §761(c). Because this Court has original jurisdiction over Petitioner's claim against the Department, we also have jurisdiction over his related claims against Superintendent Klinefelter and the MAT Specialist. *See Ortiz v. Wetzel* (Pa. Cmwlth., No. 615 M.D. 2018, filed June 6, 2019), slip op. at 4.[12] The same reasoning would apply with respect to Dr. Naji. *See Bullock v. Pa. Dep't of Corr.* (Pa. Cmwlth., No. 375 M.D. 2016, filed Sept. 28, 2017), slip op. at 9 (where inmate sought review of the actions of Department as an agency, this Court had ancillary jurisdiction over related claims against a private party).

***Legal Sufficiency of Petitioner's Request for Preliminary Injunction***

We next consider Department Respondents' and Dr. Naji's demurrer challenging the legal sufficiency of Petitioner's petition for review. They assert that the injunction will not restore the parties to their status quo as it existed before the alleged wrongful conduct,[13] because while Petitioner has been in custody since before 2019, P.F.R. ¶ 5, he has not been on MAT during this time and did not first inquire about MAT until June 2023, *see* P.F.R. Exhibits. Thus, they argue that mandating the Department to provide the specific MAT medications Petitioner requests would not restore the parties to the *status quo ante*, but instead would place

---

[12] Section 414 of this Court's Internal Operating Procedures authorizes the citation of unreported panel decisions issued after January 15, 2008, for their persuasive value, but not as binding precedent. 210 Pa. Code §69.414.

[13] A preliminary injunction should restore the status quo. *Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mount, Inc.*, 828 A.2d 995, 1001 (Pa. 2003) (listing requisites for issuance of a preliminary injunction). The status quo to be preserved is the "last actual, peaceable (and . . . lawful) noncontested status which preceded the pending controversy." *Com. v. Coward*, 414 A.2d 91, 99 (Pa. 1980) [quoting *Pa. Pub. Util. Comm'n v. Israel*, 52 A.2d 317, 321 (Pa. 1947)].

6

the parties in new positions relative to Petitioner's medical care. They seek the dismissal of the petition for review with prejudice.

While Petitioner asks only for a preliminary injunction by name in his petition for review, it is clear that he is ultimately seeking permanent injunctive relief:

> 20. I am asking this honorable [C]ourt to grant me my preliminary injunction so the [Department] will give me a MAT medication my body can tolerate . . . .
>
> 21. I believe that *once my preliminary injunction is granted*[,] *myself and the* [Department] *will not want to prolong this case. I'd be willing to withdraw this once I am receiving proper medical treatment for my opiate use disorder*.

P.F.R. ¶¶ 20-21 (emphasis supplied). Indeed, there would be no point in obtaining a preliminary injunction if a permanent injunction were not sought as well—a preliminary injunction maintains the status quo "until the merits of the controversy can be fully heard and determined," but it does not "decide the case as though on a final hearing." *Weeks v. Dep't of Hum. Servs.*, 255 A.3d 660, 666 (Pa. Cmwlth. 2021), *aff'd*, 302 A.3d 678 (Pa. 2023) [quoting *Appeal of Little Britain Twp. from Decision of Zoning Hearing Bd. of Little Britain Twp., Lancaster Cnty., Pa.*, 651 A.2d 606, 610-11 (Pa. Cmwlth. 1994)]. Finally, "[t]he allegations of a *pro se* [petitioner] are held to a less stringent standard than that applied to pleadings filed by attorneys. If a fair reading of the [petition for review] shows that the [petitioner] has pleaded facts that may entitle him to relief, the preliminary objections will be overruled." *Danysh v. Dep't of Corr.*, 845 A.2d 260, 262-63 (Pa. Cmwlth. 2004). A fair reading of the petition for review shows that Petitioner seeks permanent

injunctive relief.[14]  For these reasons, while we agree with Department Respondents that Petitioner has failed to establish entitlement to a *preliminary* injunction, dismissal of the petition for review would be inappropriate.

### *Legal Sufficiency of Petitioner's ADA Claim*

In addition to the fact that their remaining arguments in support of the demurrer to the ADA claim, that there will be no immediate and irreparable harm to Petitioner if a preliminary injunction is not granted and that he is unlikely to succeed on the merits, relate only to a *preliminary* injunction, Department Respondents do little to develop their arguments regarding his ADA claim.  *See* Dep't Resp'ts' Br. at 10-11.  Department Respondents cite an unreported federal district court decision *denying* a motion to dismiss a prisoner's claim seeking methadone treatment under the ADA[15] and identify averments Petitioner has not made.  However, Department Respondents do not identify relevant legal standards and apply them to the facts alleged (or failed to be alleged) by Petitioner.  The argument portion of a brief must be developed with pertinent discussion of the issues, including citations to relevant authority.  Rule 2119(a) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 2119(a).  When a party fails to satisfy this requirement, the Court is neither obliged, nor even particularly equipped, to develop an argument for them.  *Skytop Meadow Cmty. Ass'n, Inc. v. Paige*, 177 A.3d 377, 385 (Pa. Cmwlth. 2017).

---

[14] Assuming *arguendo* that we were to sustain the Department Respondents' preliminary objections on the basis of legal insufficiency, we would do so without prejudice.  It would seem to serve the interests of judicial economy to proceed with the understanding that the petition for review, while unartfully pled, does not request a remedy without a point.

[15] *Strickland v. Delaware Cnty.* (E.D. Pa., Civil Action No. 21-4141, filed Apr. 19, 2022).

With respect to the ADA claim, Dr. Naji argues that Petitioner is unlikely to prevail on the merits because there is no individual liability under Title II of the ADA. Title II of the ADA (relating to public services) provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

While the United States Supreme Court has not ruled on whether claims may be made against private individuals under Title II of the ADA, the lower federal courts have held that Title II does not provide for suits against state officials in their individual capacity.[16] *See Garcia v. State Univ. of N.Y. Health Scis. Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (*en banc*); *see also Scott v. Pa. Dep't of Corr.* (M.D. Pa., No. 3:24-CV-00335, May 1, 2024) (noting that although the United States Court of Appeals for the Third Circuit had not ruled on individual liability under Title II, nearly all of the Third Circuit's decisions regarding personal liability under the majority of the ADA's other titles point toward the absence of individual liability).

Following the prevailing rule, we conclude that there is no individual liability under Title II of the ADA and that Petitioner cannot prevail on the merits of his ADA claim as it regards Dr. Naji.[17]

---

[16] Among the federal courts, only the holdings of the United States Supreme Court interpreting federal statutes are binding on this Court. However, on-point decisions of the lower federal courts may well have persuasive effect. *Cole v. Pa. Dep't of Env't Prot.*, 257 A.3d 805, 813 (Pa. Cmwlth. 2021).

[17] Department Respondents have not raised this issue on behalf of Superintendent Klinefelter and the MAT Specialist.

### *Legal Sufficiency of Petitioner's Eighth Amendment Claim*

Department Respondents and Dr. Naji also assert that Petitioner's claim under the Eighth and Fourteenth Amendments is legally insufficient.[18] Department Respondents' brief leaves something to be desired in its argument regarding the demurrer to the Eighth Amendment claim. Department Respondents' argument consists of one brief paragraph stating that Petitioner has "failed to allege facts that his rights are being violated under the [Eighth] and [Fourteenth] Amendments, thus he has failed to establish that he is likely to prevail on the merits of these claims." Dep't Resp'ts' Br. at 11. Dr. Naji argues that Petitioner has failed to state a claim for deliberate indifference to a serious medical need under the Eighth Amendment that would warrant exercising injunctive relief.

To state a cause of action against a correctional health care provider under the Eighth Amendment, which prohibits the infliction of cruel and unusual punishments, a petitioner must prove "deliberate indifference to a serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). An inmate claiming deliberate indifference must allege that: (1) the deprivation of medical care is objectively sufficiently serious; and (2) subjectively, prison officials acted with a culpable state of mind, being aware of, and disregarding, an excessive risk to the inmate's health

---

[18] We agree with Dr. Naji that Petitioner's claim is properly considered as being under the Eighth Amendment, rather than as a substantive due process claim under the Fourteenth Amendment. If "a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998). To the extent the Fourteenth Amendment has relevance to this action, it is for the incorporation of the Eighth Amendment as being applicable to the states. *See Robinson v. California*, 370 U.S. 660 (1962).

and safety. *Kretchmar v. Dep't of Corr.*, 831 A.2d 793, 798-99 (Pa. Cmwlth. 2003) [citing *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994)].

In *Rokita v. Pennsylvania Department of Corrections*, 273 A.3d 1260 (Pa. Cmwlth. 2022) (*en banc*), another case brought under the ADA and the Eighth Amendment by an inmate seeking to compel participation in MAT (specifically seeking Vivitrol), we considered whether an inmate's request for injunctive relief to obtain MAT might survive preliminary objections in the nature of a demurrer. We denied the Department's preliminary objections, concluding that the alleged "blanket policy" prohibiting MAT to inmates in the situation of Rokita, i.e., those whose release on parole was not imminent, in favor of group therapy alone met both the objective and subjective requirements for a finding of deliberate indifference. *Id.* at 1269-70. We reasoned as follows:

> Because this decision was made pursuant to a policy prohibiting MAT despite Rokita's express request, the Department certainly "knows of" Rokita's condition and his request for medical treatment, but the Department "intentionally refuses to provide it," which may constitute "deliberate indifference" under our precedent. *Tindell* [*v. Dep't of Corr.*], 87 A.3d [1029,] 1040 (Pa. Cmwlth. 2014). Moreover, the response to Rokita's request does not indicate that the Department afforded any individualized consideration of Rokita's circumstance to determine whether a departure from its policy may be warranted. *See Pesce* [*v. Coppinger*], 355 F. Supp. 3d [35,] 47 [(D. Mass. 2018)] (noting in the context of "deliberate indifference" analysis that defendants had "stood by the policy without any indication that they would consider Pesce's particular medical history and prescribed treatment in considering whether departure from such policy might be warranted").

11

*Id.* at 1269. In *Pesce*, heavily relied upon by us in *Rokita*, the federal district court for Massachusetts granted preliminary injunctive relief where the plaintiff, a prisoner, was already prescribed methadone. The district court found that the correctional institution's blanket policy prohibiting the use of methadone in the face of medical advice and a prescription from the plaintiff's physician "ignore[s] treatment prescriptions given to [the plaintiff] by [his] doctors," meeting the subjective requirement of the deliberate indifference test. *Pesce*, 355 F. Supp. 3d at 48 [quoting *Alexander v. Weiner*, 841 F. Supp. 2d 486, 493 (D. Mass. 2012) (holding that plaintiff, who alleged that prison officials repeatedly ignored her physician's recommendations, stated sufficient facts to establish an Eighth Amendment violation)].

Petitioner has averred, and we must accept at this early stage of the litigation, that prison medical staff "agree that [Petitioner] need[s] MAT," P.F.R. ¶ 19; that he suffers side effects from the MAT medications he has been offered, including suicidal tendencies; and that there are policies at the Department that allow certain inmates access to the MAT medications he seeks but not himself.[19] For purposes of preliminary objections, this suffices to meet both the objective and subjective prongs of the deliberate indifference test under the Eighth Amendment.

*Mandamus*

Finally, Dr. Naji argues that mandamus is not available to compel a discretionary act, such as the choice of appropriate medical treatment. This is clearly correct, and to the extent the petition for review may be construed as a claim sounding in mandamus, it would be dismissed. However, Petitioner does not state

---

[19] Petitioner avers the Department does not give methadone to male inmates and does not give Subutex or Sublocade to him because he "came before 2019." P.F.R. ¶ 5.

that he is seeking mandamus relief—rather, he is seeking injunctive relief, which is potentially available to him under either Section 1983 or Article II of the ADA,[20] or both.

*Conclusion*

Consistent with the foregoing, Department Respondents' preliminary objections are overruled, except to the extent he seeks preliminary injunctive relief, and Dr. Naji's preliminary objections are overruled, in part, and sustained, in part.

 

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

---

[20] Section 1983 provides that "[e]very person who, under color of statute, . . . of any state . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of rights . . . secured by the Constitution and laws . . . shall be liable to the party injured in an action at law, a suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983. Title II of the ADA provides as follows: "In any action against a [s]tate for a violation of the requirements of this chapter, remedies (including remedies both at law and in equity) are available for such a violation . . . ." 42 U.S.C. § 12202.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Travis A. White, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 508 M.D. 2023 |
| | : | |
| PA DOC, SCI Houtzdale Warden | : | |
| Scott Klinefelter, Medical Director, | : | |
| MAT Specialist, Dr. Naji, Dr. Bloom, | : | |
| and Dr. Knowles, | : | |
| Respondents | : | |

# **O R D E R**

AND NOW, this 6th day of March, 2025, it is ORDERED as follows:

The Preliminary Objections of Respondents Pennsylvania Department of Corrections, Superintendent Scott Klinefelter, and the MAT Specialist (collectively, Department Respondents) and Dr. Naji to the Petition for Review filed by Petitioner Travis A. White in this matter are hereby OVERRULED, in part, and SUSTAINED, in part, as follows:

1. Department Respondents' preliminary objections are OVERRULED in part and SUSTAINED in part. To the extent Petitioner seeks a preliminary injunction, the objection is SUSTAINED and such application is DENIED. The Department Respondents' preliminary objections are OVERRULED with respect to the claim for a permanent injunction.

2. Dr. Naji's preliminary objection to lack of jurisdiction is OVERRULED;

3. Dr. Naji's preliminary objection to mandamus being improper to compel a discretionary act is OVERRULED; and

4. Dr. Naji's preliminary objection in the nature of a demurrer to the Petition for Review with respect to any claim against him as an individual under the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213, is SUSTAINED.

Department Respondents and Dr. Naji are directed to file an answer to the Petition for Review within 30 days of this order.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Travis A. White,                :

                Petitioner       :

                               :

           v.                  :     No. 508 M.D. 2023

                               :     SUBMITTED: November 7, 2024

PA DOC, SCI Houtzdale Warden     :

Scott Klinefelter, Medical Director,    :

MAT Specialist, Dr. Naji, Dr. Bloom,   :

and Dr. Knowles,                 :

               Respondents    :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE LORI A. DUMAS, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

**DISSENTING OPINION BY**
**JUDGE DUMAS**                                **FILED: March 6, 2025**

I respectfully dissent for two reasons. First, I would stay this matter brought by Travis A. White (Petitioner) per the bankruptcy court's most recent stay order. Dr. Muhammad Naji's employer, Wellpath LLC, filed for bankruptcy on November 11, 2024, and Dr. Naji filed the initial stay order with this Court. Suggestion of Bankruptcy & Notice of Automatic Stay (Pa. Cmwlth., No. 508 M.D. 2023, filed Nov. 19, 2024) (Initial Stay Order).

Subsequently, numerous federal courts construed the scope of the Initial Stay Order differently,[1] which prompted the bankruptcy court to issue a revised stay

---

[1] *Compare, e.g.*, *Bowser v. Watson* (E.D. Mich., No. 2:23-cv-10568, filed Nov. 20, 2024), 2024 WL 4989327; *Lentz v. Mich. Dep't of Corr.* (E.D. Mich., No. 2:24-cv-10198, filed Nov. 22, 2024), 2024 WL 4874213, *with, e.g.*, *Jones v. Cnty. of Fresno* (E.D. Cal., No. 1:23-cv-01636, filed Dec. 16, 2024), 2024 WL 5125809; *McLemore v. Cnty. of Mahoning* (N.D. Ohio, No. 4:23-cv-1144, filed Dec. 30, 2024), 2024 WL 5247847; *Henderson v. Correct Care Sols., Inc.* (W.D. Pa., No. 2:23-cv-1224, filed Dec. 10, 2024) (ECF No. 68); *Talbert v. Biden* (W.D. Pa., No. 1:23-cv-260, filed Nov. 22, 2024) (ECF No. 200); *Major v. Halligan* (W.D. Pa., No. 1:21-cv-60, filed Nov. 18, 2024) (ECF

order. Stipulated & Agreed Am. Order, *In re: Wellpath Holdings, Inc.* (S.D. Tx. Bankr., No. 24-90533, filed Jan. 6, 2025) (*Wellpath*) (ECF No. 962). ECF No. 962 defines several capitalized terms, including "Lawsuits," which the majority relied on in its order discounting the Initial Stay Order. *Id.* at 1 nn. 2-3; Order, 1/3/25, ¶ 6.

Critically, in its most recent interim stay order, the bankruptcy court did *not* use the defined, capitalized term "Lawsuits" in staying any "claims or causes of action that have been or may be asserted against any . . . current or former employees of the Debtor to the extent the Debtors are not named defendants in the underlying lawsuit . . . ." ECF No. 962, ¶ 2. The bankruptcy court also stayed claims or causes of action asserted against the Debtors' current or former clients and customers, including their current or former employees. *Id.* ¶¶ 3-4.[2]

_____

No. 221); *Hernandez-Santana v. Little* (E.D. Pa., No. 24-6447, filed Dec. 30, 2024), 2024 WL 5250350.

[2] ECF No. 962 follows:

> 2. Any claims or causes of action that have been or may be asserted against any of the Professional Corporations[] or their current or former employees, or current or former employees of the Debtor to the extent the Debtors are not named defendants in the underlying lawsuit, are stayed pursuant to section 362, and to the extent applicable section 105, of the Bankruptcy Code on an interim basis to and including February 18, 2025, to provide the Debtors the opportunity, as requested by the Statutory Unsecured Claimholders' Committee (the "<u>Committee</u>"), to confirm and substantiate the scope and extent of Debtors' indemnification obligations owed to these parties as well as any relevant insurance considerations.

> 3. Any claims or causes of action that have been or may be asserted against any of the Debtors' current clients or customers or their current or former employees are stayed pursuant to section 362, and to the extent applicable section 105, of the Bankruptcy Code on an interim basis to and including February 18, 2025, to provide Debtors, as requested by the Committee, the opportunity to confirm and substantiate the scope and extent of Debtors' indemnification obligations owed to these parties.

> 4. Any claims or causes of action that have been or may be asserted against any of the Debtors' former clients or customers are stayed . . . pursuant to section 362, and to the extent applicable section 105, of the Bankruptcy Code on an interim basis to and including February 18, 2025, solely to provide the Debtors the

The reason for the across-the-board stay is simple: the debtors are self-insured and finance the *defense* of lawsuits up to their insurance policies' deductible limits, at which point the insurers take over—to the extent such coverage was not previously exhausted. Financing the defense of lawsuits will necessarily deplete assets available to their creditors, notwithstanding the absence of any claim for money damages. *See, e.g.*, Debtors' Omnibus Objs. to Mots. for Relief From Automatic Stay ¶¶ 56, 60, *Wellpath* (ECF No. 827) (contending stay should continue because the debtors are, *inter alia*, contractually obligated to (1) indemnify, defend, and hold harmless Kentucky's Department of Corrections and its employees regarding Wellpath's health care to inmates, and (2) finance the defense of Wellpath's employees up to its insurance deductible in *Henderson*, a Pennsylvania federal case); ECF No. 913-1 (discussing the debtors' insurance coverage).[3]

Second, with utmost respect, I disagree with the majority's wholesale recharacterization of Petitioner's claim for a preliminary injunction as a claim for a permanent injunction. I recognize that we must construe *pro se* pleadings liberally. *Commonwealth v. Blakeney*, 108 A.3d 739, 766 (Pa. 2014) (*per curiam*).

---

opportunity, as requested by the Committee, to establish that indemnification obligations exist such that allowing such claims or causes of action to go forward would result in an administrative claim against the Debtors' estate.

ECF No. 962 ¶¶ 2-4. On February 20, 2025, the court issued its final stay order, which continues the stay pending final disposition of the bankruptcy or April 30, 2025. Order, 2/20/25, ¶¶ 2-3, *Wellpath* (ECF No. 1480).

[3] *Accord, e.g.*, Debtors' Omnibus Reply ¶¶ 13, 19, 39, *Wellpath* (ECF No. 897) (alleging that because the debtors are self-insured, they finance the *defense* out of the bankruptcy estate; further, the Pennsylvania federal *Major* suit "be stayed as to the Commonwealth of Pennsylvania defendants" because "Wellpath has agreed to provide correctional health care services for the Commonwealth of Pennsylvania" and has indemnified the municipality and its employees "for claims related to medical care"); Debtors' Emergency Mot. for Entry of Interim & Final Orders to Enforce the Automatic Stay ¶ 5, *Wellpath* (ECF No. 17) (arguing "courts routinely extend the Automatic Stay to non-debtor third-party co-defendants under this test where, as here, continued litigation would," *e.g.*, "divert management's and in-house counsel's attention and resources").

Nevertheless, it is also well settled that courts "cannot be expected to become a litigant's counsel or *find more* in a written *pro se* submission than is fairly conveyed in the pleading."[4] *Id.* (emphasis added). Although *Blakeney* did not address injunctive relief, this Court has held that the "trial court erred in converting the hearing on the preliminary injunction to a final hearing on the merits of the permanent injunction . . . ." *Big Bass Lake Cmty. Ass'n v. Warren*, 950 A.2d 1137, 1149 (Pa. Cmwlth. 2008); *Gun Owners of Am., Inc. v. City of Phila.*, 308 A.3d 401, 404 (Pa. Cmwlth. 2024) (*en banc*).

In my view, those cases stand for the clear proposition that this Court should not remodel Petitioner's request for preliminary injunctive relief as a claim for a permanent injunction. *Compare* Pet. for Rev. ¶¶ 20-21 (explicitly requesting "my preliminary injunction"), and Pet'r's Br. at 12, 14 (discussing the elements for a "preliminary injunction" and concluding that "I've shown and proven enough to the court to have my preliminary injunction granted"), *with White v. Pa. Dep't of Corr.* (Pa. Cmwlth., No. 508 M.D. 2023, filed March 6, 2025), slip op. at 7 (opining that "it is clear that he is ultimately seeking permanent injunctive relief") & Order (overruling the preliminary objections "with respect to the claim for a permanent injunction"). Therefore, I would sustain the preliminary objections and dismiss his petition for review *without prejudice* to reraise a claim for a permanent injunction if that reflects his intent. I respectfully dissent.

**LORI A. DUMAS, Judge**

---

[4] In *Blakeney*, the trial court denied the defendant's *pro se* motion for expert witness fees at the penalty phase of his trial. *Blakeney*, 108 A.3d at 766. Following his direct appeal, the defendant collaterally attacked his conviction by asserting that his appellate counsel was ineffective by not challenging the denial of expert fees for the *guilt* phase of his trial. Very simply, the Court declined to liberally construe the defendant's *penalty* phase motion as a *guilt* phase motion. *Id.*